Argued and submitted July 9, reversed and remanded in part; otherwise affirmed December 4, petitioner's petition for reconsideration filed December 18 and respondent Hank Westbrook's response to petition for reconsideration filed December 23, 2002, allowed by opinion March 6, 2003

See 186 Or App 580 (2003)

## Carol N. DOTY,
*Petitioner,*

*v.*

## COOS COUNTY
## and Hank Westbrook,
*Respondents.*

2001-202; A118190

59 P3d 50

Douglas M. DuPriest argued the cause for petitioner. With him on the brief was Hutchinson, Cox, Coons & DuPriest, P.C.

Daniel A. Terrell argued the cause for respondent Hank Westbrook. With him on the brief was Law Office of Bill Kloos, PC.

No appearance for respondent Coos County.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Assistant Attorney General, filed the brief *amicus curiae* for Department of Land Conservation and Development.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner seeks review of an opinion and order of the Land Use Board of Appeals (LUBA) remanding Coos County's decision that amended its comprehensive plan map and rezoned two parcels from Industrial to Recreation.[1] *Doty v. Coos County*, 42 Or LUBA 103 (2002). The plan and zone changes were made to facilitate the development of a 150-space recreational vehicle (RV) park on land bordering the Coquille River near the City of Bandon. We reverse in part.

We take the facts from LUBA's opinion. The subject property includes two parcels totaling 21.18 acres. It is located approximately one mile north of Bandon. It is bordered on the west by Highway 101, on the north by the Coquille River, on the east by rural residential property, and on the south by exclusive farm use (EFU) zoned land. Across Highway 101 is an estuary managed by the U.S. Fish and Wildlife Service, and there are farm and water-dependent uses across the Coquille River to the north.

---

[1] After oral argument in this case, we requested that the parties demonstrate that this controversy is justiciable. Specifically, we asked petitioner to demonstrate that she has standing under the standard articulated in *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003). In *Utsey*, we reasoned that (1) the party that invokes the jurisdiction of the court has the "obligation to establish the justiciability of its claim"; (2) to establish that the claim is justiciable, the party "must demonstrate that a decision in this case will have a practical effect on its rights"; and (3) "[t]he case law concerning the 'practical effects' requirement clearly states that an abstract interest in the proper application of the law is not sufficient." 176 Or App at 549-50. In response to our request, petitioner filed an affidavit in which she indicates, in part:

"The Westbrook property is located a short distance north of Bandon on the east side of Highway 101 and immediately south of the Coquille River. I pass by the property regularly. The Westbrook property is in a conspicuous location. Development of the property as proposed by Westbrook and as allowed by the county would significantly change the character of the vicinity and would adversely affect my use and enjoyment of the Coquille River estuary in the vicinity of the Westbrook property. I use the Coquille River estuary in this vicinity for passive recreation, including the viewing of wildfowl and other birds."

Under the standard articulated in *Utsey*, we conclude that petitioner has standing. Accordingly, we do not address the parties' arguments concerning whether *Utsey* was correctly decided. We also note that, although petitioner was given an opportunity on review to demonstrate her standing, parties should make such a demonstration before the initial decision-maker.

A portion of the subject property is within the Coastal Shorelands Boundary (CSB) and is, therefore, subject to regulations implementing Statewide Land Use Planning Goal 17 (Coastal Shorelands). Lands that are within the CSB are divided into management segments. Each segment is subject to provisions of the Coquille River Estuary Management Plan (CREMP), which is part of the county's comprehensive plan. The CREMP limits the types of uses that may be conducted in each segment.[2] Each segment is given a primary zoning designation and a CREMP overlay designation. The applicable section here is Shorelands Segment 16.

Originally, the subject property was part of a 25.6-acre parcel. In 1915, that parcel was developed with a lumber mill. In 1983, the county adopted a "physically developed and irrevocably committed" exception[3] to Goal 3 (Agricultural Lands) for this property and zoned the property Industrial. *Doty*, 42 Or LUBA at 105-06. In 1996, the property was partitioned into three parcels. The following diagram shows the configuration of the property:[4]

---

[2] Among other requirements, the CREMP provides that local governments must maintain particular priorities for the overall use of coastal shorelands. Water-dependent and water-related uses have a higher priority than non-water-dependent and non-water-related uses, which themselves must not inalterably commit shorelands to more intensive uses. Further, the CREMP requires a demonstration of public need for particular uses that would cause a permanent or long-term change in the features of coastal shorelands.

[3] ORS 197.732 describes a physically developed exception, ORS 197.732(1)(a), and an irrevocably committed exception, ORS 197.732(1)(b).

[4] We took this diagram from LUBA's order and note, as did LUBA, that it is not drawn to scale.

The development of the RV park is to take place on a portion of Parcel 1 and all of Parcel 3. The former mill buildings are located on Parcel 2 and are now used for finishing and storing Port Orford cedar. Consequently, no plan or zone change is sought for Parcel 2. Because the Industrial zone does not permit the proposed RV park, applicant Westbrook sought to amend the comprehensive plan map and to redesignate the property to a Recreation zone in which the proposed development would be permissible. According to LUBA, the Coos County Board of Commissioners approved Westbrook's request, concluding that a new goal exception was not needed and "that a conditional use permit was not necessary to allow RV park use." *Doty*, 42 Or LUBA at 107. The county also found that only two and one-half acres of Parcel 1 were subject to the restrictions of the CREMP. That part of the property was not included in the area that was rezoned.

Petitioner appealed the county's decision to LUBA. An initial issue before LUBA was how much of the property that is subject to the plan and zone changes is located within "Shorelands Segment 16." Before LUBA, petitioner argued that all of the property for which the plan and zone changes were sought was within Shorelands Segment 16. Westbrook asserted that the county was correct that only a two and one-half acre portion of Parcel 1 was in Shorelands Segment 16 and, therefore, was subject to the CREMP.

In an effort to clarify that issue, LUBA apparently asked the county to submit the zoning map with the boundary line that the county believed was accurate. The county sent LUBA a copy of the zoning map, and, on the day it issued its decision, LUBA apparently also received a copy of the applicable portion of the county's comprehensive plan. LUBA rejected petitioner's assertion that the subject property at issue here is within the CSB and subject to the CREMP. Instead, it agreed with Westbrook that only two and one-half acres are within Shorelands Segment 16. LUBA explained that, in reaching its decision, it relied on the county's official zoning map, which included the notation of a boundary line cutting across the subject property at an angle. LUBA noted that the zoning map shows a numeric designation "10" on that boundary line, which corresponds to the following notation at the bottom of the map:

"Coastal Shoreland Boundary Interpretation by Planning Director P.E. 2-1-96[.] Basis: FIRM 100 yr. Flood Plain Map[.] Sterio of 1992 Air Photo's 15' Quad Map[.] Located in Section 17[.] 12-18-96/LNW[.]"

LUBA further explained that, in its view, the boundary line drawn on the map was a "boundary interpretation" that was issued at the time that the property was partitioned in 1996. The interpretation apparently was made under the authority of Coos County Zoning and Land Development Ordinance (CCZLDO) 4.1.450. Under that ordinance, the planning director is required to establish the precise location of the CSB when a development action is proposed in the immediate vicinity of the CSB and the development action relies on a precise interpretation of the CSB.[5] LUBA found that the boundary line drawn on the zoning map reflected the director's interpretation of the CSB at the time of the 1996 partition. LUBA noted, however, that the planning director did not also revise the map included in the CREMP. In other words, the plan map and the zoning map were inconsistent after the director's 1996 interpretation. In its opinion, LUBA stated that petitioner attached no significance to the planning director's omission.

In her first assignment of error, petitioner argues that LUBA erred in concluding that only two and one-half acres of the subject property are within Shorelands Segment 16. Petitioner makes a number of different arguments to support her view that LUBA erred in not concluding that all or at least more of the subject property is within Segment 16. She first asserts that, because the CREMP, which is part of the

---

[5] As LUBA indicated, CCZLDO 4.1.450 provides, in pertinent part:

" 'When development action is proposed in the immediate vicinity of the [CSB] *and* when such proposed development action relies on a precise interpretation of the CSB, the Planning Director shall establish the precise location of the CSB using the seven criteria specified in the Coastal Shorelands goal. Establishment of the exact location may require an on-site inspection. If the location of the CSB as shown on the Plan maps or Coastal Shorelands Inventory map is subsequently found to be inaccurate or misleading, the Planning Director shall make the appropriate minor adjustments to the maps and provide a copy of any map revision to the County Clerk.' "

*Doty*, 42 Or LUBA at 107-08 (quoting CCZLDO 4.1.450) (bracketed material in *Doty*; emphasis in CCZLDO 4.1.450).

county's comprehensive plan, shows all of the property to be within the CSB, the plan must prevail and the zoning map showing a different boundary must be held invalid. All parties appear to accept that the county's plan map was not changed to conform to the change in the boundary on the zoning map. In making her argument, petitioner relies on *Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975). However, LUBA observed that petitioner did not attach significance to the planning director's apparent failure to revise the plan map. Petitioner disputes that observation by LUBA. However, our review of the record before LUBA confirms that LUBA is correct that petitioner never argued before it that, in the case of a conflict, the plan map prevails. Accordingly, we do not consider it further.

Petitioner also argues that the boundary line drawn on the zoning map does not control, because the county planning director's interpretation of what petitioner characterizes as an unambiguous boundary exceeded the director's authority under CCZLDO 4.1.450. She further argues that, even assuming that the planning director had authority to interpret the boundary under those circumstances, the methodology used in determining the boundary was improper. However, the problem with petitioner's arguments is that she is attempting to challenge the director's 1996 decision and she has not explained the legal reason that such a challenge is cognizable in this review proceeding. Accordingly, we do not address the merits of petitioner's arguments on those points.

Petitioner makes one additional argument in her first assignment of error. She asserts that both the county and LUBA erred by using the boundary line shown in Westbrook's application, rather than the boundary line identified by the planning director in 1996 and shown on the zoning map submitted by the county. The line in Westbrook's application apparently is markedly farther north than the line reflected in the official zoning map. In her brief to this court, petitioner included the following map to illustrate the boundary line discrepancy:

We agree with petitioner that the difference between the planning director's 1996 boundary interpretation and the boundary line used in Westbrook's application, and adopted by LUBA, appears to be significant and is not explained. Petitioner asserts that using the planning director's boundary line results in the inclusion of at least 10 acres in the CSB, rather than two and one-half acres. That apparent discrepancy, without any explanation from LUBA, raises a question as to whether LUBA erred in applying the substantial evidence test when it concluded that the evidence supported the county's interpretation of the CSB as applying to only two and one-half acres of the subject property. *See Save Oregon's Cape Kiwanda v. Tillamook Cty.*, 177 Or App 347, 356-59, 34 P3d 745 (2001); *see also Younger v. City of Portland*, 305 Or 346, 358, 752 P2d 262 (1988). Consequently, we remand that portion of LUBA's determination either for reconsideration or for an explanation reconciling the apparent difference between the placement of the line as reflected in the county's approval and the line shown on the official zoning map.

In petitioner's second assignment of error, she asserts that LUBA erred in concluding that no new exception under Statewide Land Use Planning Goals 2 (Land Use Planning) and 3 (Agricultural Lands) was required. Petitioner argued to LUBA that, because the contemplated change in use was sufficiently different from that authorized in the exception to Goal 3, a new exception is required. As discussed above, the exception taken for the property that is to be used

for the proposed development is an "irrevocably committed" exception. ORS 197.732(1)(b). Petitioner contends that the existing Goal 3 exception is predicated on the property being irrevocably committed to a particular use, *i.e.*, a water-dependent industrial use. Petitioner argues that a new exception to Goal 3 must be taken because an entirely different use is proposed here, *i.e.*, a non-water-dependent recreational use.

LUBA rejected petitioner's argument. LUBA concluded that OAR 660-004-0018(2) governs whether the proposed change in use is permitted under the existing exception. Relying on its decision in *Friends of Yamhill County v. Yamhill County*, 41 Or LUBA 247 (2002), LUBA held that a change in the uses allowed on land that is already subject to an irrevocably committed or physically developed exception does not necessarily require a new exception to Goal 3. It then determined that the county's findings nevertheless failed to show compliance with OAR 660-004-0018(2)(b), mainly because the county failed to adequately explain how the RV park use will be limited to rural density and service requirements and be compatible with adjacent uses. Therefore, LUBA remanded the case to the county for reconsideration.

On review, petitioner is not satisfied with LUBA's disposition of her argument that the county must take a new exception in order to allow the proposed plan and zone changes. We agree with LUBA, however, that OAR 660-004-0018 governs whether a change in use is allowed under an existing exception. The rule provides:

"(1) Purpose. This rule explains the requirements for adoption of plan and zone designations for exceptions. Exceptions to one goal or a portion of one goal do not relieve a jurisdiction from remaining goal requirements and do not authorize uses, densities, public facilities and services, or activities other than those recognized or justified by the applicable exception. Physically developed or irrevocably committed exceptions under OAR 660-004-0025 and 660-004-0028 are intended to recognize and allow continuation of existing types of development in the exception area. *Adoption of plan and zoning provisions that would allow changes in existing types of uses, densities, or services*

*requires the application of the standards outlined in this rule.*

"(2)   For 'physically developed' and 'irrevocably committed' exceptions to goals, plan[ ] and zone designations shall authorize a single numeric minimum lot size and shall limit uses, density, and public facilities and services to those:

"(a)   Which are the same as the existing land uses on the exception site; or

"(b)   Which meet the following requirements:

"(A)   The rural uses, density, and public facilities and services will maintain the land as 'Rural Land' as defined by the goals and are consistent with all other applicable Goal requirements; and

"(B)   The rural uses, density, and public facilities and services will not commit adjacent or nearby resource land to nonresource use as defined in OAR 660-004-0028; and

"(C)   The rural uses, density, and public facilities and services are compatible with adjacent or nearby resource uses.

"(3)   Uses, density, and public facilities and services not meeting section (2) of this rule may be approved only under provisions for a reasons exception as outlined in section (4) of the rule and OAR 660-004-0020 through 660-004-0022.

"(4)   'Reasons' Exceptions:

"(a)   When a local government takes an exception under the 'Reasons' section of ORS 197.732(1)(c) and OAR 660-004-0020 through 660-004-0022, plan and zone designations must limit the uses, density, public facilities and services, and activities to only those that are justified in the exception;

"(b)   When a local government changes the types or intensities of uses or public facilities and services within an area approved as a 'Reasons' exception, a new 'Reasons' exception is required."

(Emphasis added.)

Subsection (1) of the rule clearly provides that the standards in the rule determine whether a change in use is

permissible under an existing exception. Under the rule, a physically developed or irrevocably committed exception will permit only uses that are the same as those already existing on the property or uses that can meet the requirements set out in the rule. In such cases, no new exception is required. By its express terms, OAR 660-004-0018 does not require a new exception if the change in use complies with the substantive requirements of OAR 660-004-0018(2). However, changes in existing uses that do not meet those requirements are subject to the requirements for a new exception that are set out in OAR 660-004-0018(3). That provision calls for a "reasons" exception if the change in use proposed for an area already subject to a physically developed or irrevocably committed exception does not meet the use and density limitations in OAR 660-004-0018(2). In other words, a physically developed or irrevocably committed lands exception will suffice when the proposed change in use is either to a new like use or to one that does not alter the character of use and services required to support it and is otherwise compatible with adjacent or nearby resource uses. When the proposed new use does not comply with the restrictions in subsection (2), the local government must demonstrate why the proposed use should be allowed under rules governing reasons exceptions. OAR 660-004-0018(3). In a sense, the basis for the physically developed or committed lands exception evaporates with an incompatible proposed use, and a new rationale for not applying the otherwise applicable resource goal becomes necessary.

We conclude that LUBA's disposition is consistent with the text of OAR 660-004-0018. As discussed above, LUBA remanded the county's decision for another look at the findings regarding the proposed RV park's compliance with the limitations in the rule. Petitioner's arguments were essentially reflected in LUBA's bases for remanding the decision, that is, the county insufficiently addressed the proposed park's compatibility with the rural character of the area and the restrictions in OAR 660-004-0018(2)(b) that are designed to ensure such compatibility. Should the county ultimately be unable to show compliance with OAR 660-004-0018(2)(b), a new "reasons" exception would be required under OAR 660-004-0018(3). At this point, however, whether a new exception

will be required is speculative. We do not agree with petitioner's assertion that LUBA erred in not concluding that, at this time, a new exception must be taken to allow the proposed use.

Reversed and remanded for reconsideration of the location of the Coastal Shorelands Boundary as applied to the subject property; otherwise affirmed.