Submitted on record and briefs November 3, 2003, affirmed on petitions; cross-petition dismissed April 21, both petitions for review allowed July 27, 2004
(337 Or 247)

James JUST,
*Respondent - Cross-Petitioner,*

*and*

STATE OF OREGON,
*Intervenor on Judicial Review,*

*v.*

CITY OF LEBANON,
*Petitioner - Cross-Respondent,*

*and*

The CORNELL FAMILY TRUST,
*Petitioner - Cross-Respondent.*

2003-044; A122517

88 P3d 312

Thomas A. McHill, Natasha A. Zimmerman, and Morley, Thomas, McHill & Phillips, LLC, filed the briefs for petitioner - cross-respondent City of Lebanon.

Wallace W. Lien filed the briefs for petitioner - cross-respondent The Cornell Family Trust.

James Just filed the brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed a *response to motion to dismiss for intervenor on judicial review* State of Oregon.

Christine M. Cook and Michael K. Collmeyer filed a response to motion to dismiss for *amicus curiae* 1000 Friends of Oregon.

Before Deits, Chief Judge, and Schuman, Judge, and Leeson, Judge pro tempore.

DEITS, C. J.

## DEITS, C. J.

This judicial review is one of five concerning the City of Lebanon's decisions to annex several pieces of property and to apply particular zoning designations to those properties. James Just appealed four of the annexation and zoning decisions to the Land Use Board of Appeals (LUBA), and Friends of Linn County appealed the fifth. In each of the five cases, LUBA remanded the annexation and zoning designation because it concluded that the city had failed to meet certain annexation criteria in its comprehensive plan. Even though each of the city's decisions concerned a different piece of property, the challenges to LUBA's remand in each of the five judicial reviews are similar.[1]

■ In this judicial review, petitioners, the City of Lebanon (the city) and the Cornell Family Trust (the trust), seek review of LUBA's decision remanding the city's annexation and zoning designation of approximately 61 acres of land abutting the city limits.[2] Just filed a cross-petition for

---

[1] The other judicial reviews are as follows: *Friends of Linn County v. City of Lebanon*, 193 Or App 151, 88 P3d 322 (2004); *Just v. City of Lebanon (A122516)*, 193 Or App 121, 88 P3d 307 (2004); *Just v. City of Lebanon (A122519)*, 193 Or App 155, 88 P3d 936 (2004); *Just v. City of Lebanon (A122520)*, 193 Or App 159, 88 P3d 937 (2004).

[2] The trust was the applicant before the city and an intervenor before LUBA. As a party to the proceeding before LUBA, the trust has statutory standing under ORS 197.850. *See* ORS 197.850(1) (providing that "[a]ny party to a proceeding before the Land Use Board of Appeals under ORS 197.830 to 197.845 may seek judicial review of a final order issued in those proceedings"); *see also* OAR 661-010-0010(11) (providing that, generally, a party to an appeal to LUBA means "the petitioner, the governing body, and any person who intervenes as provided in OAR 661-010-0050"). The trust also has constitutional standing to seek judicial review in this court. *See Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003) (describing constitutional standing principles). The city also petitions for judicial review; however, we note that the city did not appear before LUBA. Because the trust has standing in this court and the trust and city make similar arguments in this review proceeding, it is immaterial whether the city independently has standing, and we do not consider that issue. *See deParrie v. State of Oregon*, 133 Or App 613, 617, 893 P2d 541, *rev den*, 321 Or 560 (1995) (reasoning that, "[b]ecause [two of the plaintiffs] have standing, and the substantive and litigative positions of the other plaintiffs in the same action are exactly the same as theirs, it is immaterial whether the other plaintiffs independently have standing"); *see also Thunderbird Motel v. City of Portland*, 40 Or App 697, 704, 596 P2d 994, *rev den*, 287 Or 409 (1979) (reasoning that, "[b]ecause one or more of the plaintiffs have standing to raise all of the matters which are presented by their appeal, we turn to the merits"). For purposes of the discussion in this opinion, we take our description of the arguments from the trust.

judicial review. We take the facts from LUBA's order. *Just v. City of Lebanon*, 45 Or LUBA 179 (2003).

> "The subject property includes approximately 61 undeveloped acres, and has been cultivated for grass seed in the recent past. The property is located outside [the] city limits, with its eastern boundary abutting [the] city limits. The property is located within the city's urban growth boundary (UGB), which is coterminous with the parcel's southern boundary. The property is designated Mixed Density Residential on the Lebanon Comprehensive Plan (LCP) map. The subject property is zoned Urban Growth Area, Urban Growth Management with a 10-acre minimum parcel size * * * by Linn County. The challenged decision annexes the property to the city and applies the city's [Residential Mixed Density] zoning designation to the property.

> "The property is bounded on the east by South Fifth Street, a designated collector street improved to county standards. Oak Creek traverses the northeastern portion of the property and renders approximately 10 acres unsuitable for residential development. Surrounding land uses include: agricultural fields to the east, west, and northwest; rural residences to the north, northeast, and southwest; and a private school campus to the south. None of the properties that abut the property on the north, west or south are within [the] city limits. The private school is located outside the UGB, in unincorporated Linn County.

> "A 16-inch water main is located along South Fifth Street. A 10-inch sewer line is located to the north of the subject property, and would need to be extended to the property, if development occurs prior to the construction of a planned interceptor sewer line. A development proposal was not submitted in conjunction with the annexation request, however, it is anticipated that the property will be developed for residential use."

*Id.* at 181.

The trust's first assignment of error concerns whether Just (the petitioner before LUBA, the respondent on the petition for judicial review, and the cross-petitioner on the cross-petition for judicial review) had standing before LUBA and has standing in this court under *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*,

335 Or 217 (2003). In *Utsey*, we held that "the person invoking the jurisdiction of the courts must establish that a decision would have a practical effect on him or her." *Id.* at 543 (emphasis omitted).

The trust asserts that, because Just failed to demonstrate a practical effect on his rights, he lacks standing as a respondent before this court. Specifically, the trust asserts that, "[w]here an opponent to a land use application recites that his only interest in objecting to the application is to make sure the city properly applies its laws, that person does not have a justiciable claim to seek redress of in the appellate process."

The trust also asserts that LUBA erred by refusing to dismiss Just's appeal because, under the standard articulated in *Utsey*, Just had not demonstrated that a justiciable controversy existed before LUBA. The trust asserts that the constitutional justiciability requirements that we articulated in *Utsey* apply to proceedings before LUBA for two alternative reasons. First, even though LUBA is an executive branch agency, it "performs judicial review functions and exercises adjudicatory powers just as any court does." Second, ORS 197.805 provides, in part, that LUBA's "decisions be made consistently with sound principles governing judicial review."

Finally, the trust has moved to dismiss Just's cross-petition for judicial review in this court because Just lacks standing. The trust contends that, under *Utsey*, Just must "establish the justiciability of [his] claim as a matter of constitutional law" and that he failed to do so.

To resolve the trust's and the city's first assignment of error and the trust's motion to dismiss, we must resolve the following three issues: (1) whether the justiciability requirements articulated in *Utsey* apply to proceedings before LUBA and, if they do, whether Just satisfied those requirements; (2) whether Just must demonstrate standing as a respondent on review in this court; and (3) whether Just has standing as a cross-petitioner in this court. We address each issue in turn.

■ We begin by determining whether the constitutional justiciability requirements articulated in *Utsey* apply to proceedings before LUBA. In its order in this case, LUBA concluded that those requirements do not apply because standing before LUBA is determined by statute and not by whether the decision will have a practical effect on the petitioner. LUBA concluded:

> "In *Utsey*, the court held that an appellant seeking review by the Court of Appeals must demonstrate that the outcome of the proceedings will have a practical effect on that party. According to [the trust], [Just] does not live in the City of Lebanon, the decision will not have any practical effect on him, and we should dismiss the case for those reasons. As [the trust] acknowledges, we have already rejected similar challenges to standing at LUBA. *See Central Klamath County CAT v. Klamath County*, 41 Or LUBA 524, 527 (2002) (standing before LUBA determined by statute rather than practical effect). [The trust] urges us to reconsider our position that a petitioner may have standing to appeal a local government's land use decision to LUBA under ORS 197.830(2), even though that petitioner may not have standing to seek judicial review of LUBA's decision by the Court of Appeals. However, [the trust] provides no compelling reason to revisit our prior decisions, and we decline to do so."

*Just*, 45 Or LUBA at 182.

LUBA's conclusion was based on its reasoning in prior decisions, including *Central Klamath County CAT*, the case on which it expressly relied in its order in this case. In *Central Klamath County CAT*, LUBA stated that "[t]he county appears to concede that LUBA does not exercise judicial power in any constitutional sense and that the limitation on the judicial power described in *Utsey* does not apply to LUBA directly." 41 Or LUBA at 528. Thus, LUBA addressed only the argument that "ORS 197.805 evinces legislative intent to subject LUBA's review to the same limitations the Oregon Constitution imposes on the judicial power." *Id.* at 529. In rejecting that argument, LUBA reasoned, in part:

> "LUBA has invoked ORS 197.805 as statutory authority to apply a number of different principles of judicial review. The most pertinent example involves the principle that

LUBA will dismiss an appeal where the underlying matter has become moot. The Board has applied that principle from its earliest cases. Our understanding of the mootness doctrine was based on appellate case law and, like those cases, formulated the principle as requiring dismissal where a decision on the merits would have no practical effect. We subsequently identified ORS 197.805 as authorizing application of that principle in our review.

"As the majority opinion in *Utsey* explained, the mootness doctrine can be viewed as a temporal aspect of the fundamental principle of justiciability, that *at all times* the court's decision must have a practical effect on the rights of the parties. In the present case, we understand the county to argue that, just as ORS 197.805 requires LUBA to apply the mootness doctrine in its review, it also requires LUBA to apply the fundamental principle underlying that doctrine—that petitioners satisfy the practical effect standard—as a condition to invoking LUBA's review.

"It may not be the case, as the county presumes, that ORS 197.805 *requires* LUBA to apply in a rote fashion each and every potentially applicable principle of judicial review, or every aspect of such principles, without regard to whether that principle is compatible with LUBA's review functions and with statutory polices governing participation in and review of land use decisions. In other words, it may be consistent with ORS 197.805 to apply existing sound principles of judicial review in a modified form to fit the particular context of LUBA's review, and even to ignore such principles, where they are incompatible with competing principles or statutory policies.

"Be that as it may, we do not understand the county to question that, even if ORS 197.805 broadly mandates that LUBA apply each and every sound principle of judicial review, potentially including the practical effect standard discussed in *Utsey*, the legislature may and indeed has adopted specific statutes that require LUBA to conduct its review in a manner that may differ from that conducted under 'sound principles of judicial review.' For example, ORS 197.835(11)(a) requires that, where possible, LUBA 'shall decide all issues presented to it when reversing or remanding' a land use or limited land use decision. That statutory mandate is arguably contrary to a principle of judicial review that the Court of Appeals often applies in its review of LUBA, and other, decisions. For the reasons that

follow, we conclude that, even assuming ORS 197.805 can be read in isolation to require that LUBA apply the practical effect standard discussed in *Utsey*, when read in context it is clear that the legislature has chosen otherwise.

"As noted ORS 197.830(2) provides in relevant part that a person may petition LUBA for review of a land use or limited land use decision where the person files a notice of intent to appeal and appears before the local government. ORS 197.830(2) contains no other requirements that relate to the standing of petitioners, which suggests that the legislature intended that no other such requirements apply. That suggestion is not a particularly strong one, and it does not in itself conclusively dispel the county's contrary view that ORS 197.805 may import principles of judicial review that *add to* the requirements expressly imposed by ORS 197.830(2). Nonetheless, the county's view requires reading into the terms of a statute a requirement that is present in the statutory scheme, if at all, only as an implication drawn from a general policy statement. In interpreting a statute, our task is not to 'insert what has been omitted, or to omit what has been inserted.' ORS 174.010. The county's proffered interpretation of ORS 197.805 and 197.830(2) is far closer to inserting 'what has been omitted' than the contrary view of the statutes is to omitting 'what has been inserted.' "

*Central Klamath County CAT*, 41 Or LUBA at 530-33 (emphasis in original; citations and footnotes omitted). LUBA concluded that, because the petitioner Central Klamath County CAT satisfied the standing requirements in ORS 197.830, it had standing before LUBA. *Id.* at 535. With that understanding of LUBA's position, we turn to the trust's arguments.

■         As discussed above, the trust asserts that, even though LUBA is an executive branch agency, it performs judicial review functions and exercises adjudicatory powers just like a court. For that reason, it concludes that the justiciability requirements that we articulated in *Utsey* apply not only to courts but also to LUBA.[3] The problem with that argument is that, even though LUBA exercises adjudicatory powers, as we will explain, the constitution has not vested judicial power in LUBA. Consequently, LUBA is not subject to

---

[3] In *Utsey*, we concluded that the party that invokes the jurisdiction of the court has the "obligation to establish the justiciability of its claim," 176 Or App at

the prerequisites to the exercise of judicial power that we identified in *Utsey*.

LUBA is an administrative agency that was granted its existence and authority to act by the legislature. *See* ORS 197.810; *Valley & Siletz Railroad v. Laudahl*, 296 Or 779, 786, 681 P2d 109 (1984); *see also Ochoco Const. v. DLCD*, 295 Or 422, 426, 667 P2d 499 (1983) (describing the nature of an administrative agency and the source of its authority). The Supreme Court has indicated that, even though LUBA performs adjudicatory functions, it is not a court in which the constitution has vested judicial power:

> "LUBA is directed by statute to 'conduct review proceedings upon petitions filed in the manner prescribed.' ORS 197.820(1) (*former* Or Laws 1979, ch 722, § 2(a)(1)). The agency is empowered to conduct review of land use decisions through quasi-judicial proceedings. LUBA is a tribunal created by the state to ensure that local governments do not misapply the state land use statutes and related goals and rules. That this function is carried out through case-by-case decisionmaking in a quasi-judicial setting does not violate the doctrine of separation of powers as expressed by Article VII (Amended), section 1, or Article III, section 1, of the Oregon Constitution.

> "Previous cases make it clear that the doctrine of separation of powers does not prevent the exercise of adjudicatory functions by administrative agencies. We now hold that the doctrine of separation of powers does not prevent the exercise of adjudicatory functions by LUBA."[4]

*Wright v. KECH-TV*, 300 Or 139, 146, 707 P2d 1232 (1985), *cert den*, 476 US 1117 (1986) (citations omitted).

---

549; in order to establish the justiciability of its claim, the party "must demonstrate that a decision in this case will have a practical effect on its rights," *id*. at 550; and that "[t]he case law concerning the 'practical effects' requirement clearly states that an abstract interest in the proper application of the law is not sufficient," *id*.

[4] *See also Baxter v. Monmouth City Council*, 51 Or App 853, 856, 627 P2d 500, *rev den*, 291 Or 368 (1981) (in rejecting the petitioner's constitutional challenge to the delegation of solely adjudicatory functions to LUBA, we stated that "[d]elegation of adjudicatory powers to administrative agencies has been upheld in this state where judicial review is provided at some stage of the proceeding" and that separation of powers problems do not exist because "[t]he adjudicatory functions carried out by LUBA are ancillary to an administrative objective: the regulation of land use in this state").

In *Utsey*, we explained that the state constitution is the source of justiciability principles and that those principles circumscribe the judicial power that the constitution confers on courts. Specifically, we noted that

> "the Oregon Constitution does not expressly mention justiciability, much less standing. It does, however, confer on the *courts* the 'judicial power.' The question is what the framers likely intended that to mean. In light of the case law that existed up to the adoption of the original Article VII in 1857—and even the amended version in 1910—it is likely that the framers would have understood the judicial power to conform to the limited, private rights model of adjudication that is reflected in early federal cases[.]"

176 Or App at 535 (emphasis added; citation omitted). We reasoned that,

> "regardless of what the legislature provides regarding the standing of litigants to obtain judicial relief, the *courts* always must determine that the constitutional requirements of justiciability are satisfied. Any legislation conferring the authority to render an opinion in the absence of a practical effect on the party seeking relief, by definition, amounts to a conferral of authority to render an advisory opinion."[5]

*Id.* at 548 (emphasis in original omitted; emphasis added). For those reasons, we conclude that, because LUBA is not a court in which the constitution vests judicial power, the justiciability principles described in *Utsey* that circumscribe the exercise of judicial power do not apply to LUBA.

---

[5] As Judge Edmonds indicated in his concurrence in *Utsey*:

"Under the constitution, the legislature is at liberty to make any individual or entity that it desires a party to an *executive* proceeding, including a party who represents only the public interest, rather than a personal interest. Consequently, there is nothing unconstitutional, insofar as Article III, section 1, [the section that divides the powers of government into three departments,] is concerned, about the provisions of ORS 197.830 that permit any person or organization who has appeared before the local government, special district or state agency to appear as a party before the Land Use Board of Appeals * * *. Where the legislature potentially runs afoul of Article III, section 1, is in the conferral of judicial review of LUBA's decisions on this court, without regard for the fact that executive proceedings may lack a justiciable controversy."

176 Or App at 561 (Edmonds, J., concurring) (emphasis in original).

Alternatively, the trust asserts that ORS 197.805 provides that LUBA is to make decisions "consistently with sound principles governing judicial review" and that LUBA has cited that statute as authority for its application of the mootness doctrine.[6] According to the trust, *Utsey* establishes that "[m]ootness * * * is simply the requirement that the practical effect on a person's rights (which is the heart of justiciability) be present throughout the pendency of the entire case" and that "mootness is not a separate doctrine at all, but is part and parcel of the general principle of justiciability." Thus, the trust asserts that

> "LUBA [cannot] have it both ways. If there is not a justiciability requirement in ORS 197.805, neither can there be a mootness requirement. When LUBA concludes it may pick and chose between mootness and justiciability it has committed error, because mootness and justiciability are not two different standards, rather there is but one standard of justiciability and a requirement that this standard be present at all times during the pendency of the case[.]"

For those reasons, the trust concludes that LUBA erred "in not dismissing this case on the grounds that there was no justiciable controversy."[7]

The issue of whether LUBA must apply the practical effects requirement articulated in *Utsey* because it has chosen to apply some aspects of the "mootness" doctrine requires

[6] *See, e.g., Heiller v. Josephine County*, 25 Or LUBA 555, 556 (1993) (dismissing appeal as moot because the challenged land use decision had been rescinded by the county and the county's decision rescinding its earlier decision had not been appealed); *Barr v. Clackamas County*, 22 Or LUBA 504 (1991) (dismissing appeal as moot where a new law, which permitted the challenged use of the subject property, became effective while the appeal was pending).

[7] Even though the trust did not make that argument to LUBA, we address it because it implicates LUBA's jurisdiction and challenges to jurisdiction may be raised for the first time on appeal. *See ODOT v. City of Mosier*, 161 Or App 252, 260, 984 P2d 351 (1999) (addressing an argument that was made for the first time at oral argument because "it implicate[d] the jurisdictional question of whether the city's decision is a final land use decision that comes within LUBA's review authority"); *Hillyer's Mid-City Ford, Inc. v. City of Woodburn*, 156 Or App 400, 403, 965 P2d 474 (1998) (reasoning that, even though neither party asserted that there was no final appealable land use decision before LUBA over which it had jurisdiction, we would consider that jurisdictional issue *sua sponte*); *cf. Poddar v. Clatsop County*, 167 Or App 162, 164, 2 P3d 929, *adh'd to on recons*, 168 Or App 556, 7 P3d 677, *rev den*, 331 Or 193 (2000) ("[W]e must consider the issue of justiciability *sua sponte* because it affects the trial court's jurisdiction to enter the judgments.").

us to interpret the statute that LUBA relied on as the source of authority for its use of the mootness doctrine, ORS 197.805. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We begin and end our inquiry with the text of the statute and its context, which includes related statutes. *See PGE*, 317 Or at 610-11.

ORS 197.805 provides:

> "It is the policy of the Legislative Assembly that time is of the essence in reaching final decisions in matters involving land use and that those decisions be made *consistently with* sound principles governing judicial review. It is the intent of the Legislative Assembly in enacting ORS 197.805 to 197.855 to accomplish these objectives."

(Emphasis added.) The text of ORS 197.805 requires that LUBA make decisions "consistently with sound principles governing judicial review." The term "consistently" means "in harmony with ⟨ with our intentions⟩." *Webster's Third New Int'l Dictionary* 484 (unabridged ed 1993); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 207 (2d ed 1995) ("For adverbial uses, *consistently with* (= in a manner consistent with) is the correct phrase." (Emphasis in original.)). Accordingly, the statute does not require LUBA to apply all of the judicial review principles in exactly the same way that a court would apply them. As we will discuss, the legislature's use of the words "consistently with" indicates that LUBA may modify sound principles of judicial review or choose not to apply certain principles to ensure that its decision is compatible with the specific statutes and principles governing LUBA's review.

The context of ORS 197.805 supports that conclusion. In particular, ORS 197.830, the statute concerning a person's standing to appeal to LUBA, provides:

> "(2)   Except as provided in ORS 197.620(1) and (2), a person may petition the board for review of a land use decision or limited land use decision if the person:
>
> "(a)   Filed a notice of intent to appeal the decision as provided in subsection (1) of this section; and
>
> "(b)   Appeared before the local government, special district or state agency orally or in writing.

"(3)   If a local government makes a land use decision without providing a hearing, except as provided under ORS 215.416(11) or 227.175(10), or the local government makes a land use decision that is different from the proposal described in the notice of hearing to such a degree that the notice of the proposed action did not reasonably describe the local government's final actions, a person *adversely affected* by the decision may appeal the decision to the board under this section:

"(a)   Within 21 days of actual notice where notice is required; or

"(b)   Within 21 days of the date a person knew or should have known of the decision where no notice is required.

"(4)   If a local government makes a land use decision without a hearing pursuant to ORS 215.416(11) or 227.175(10):

"(a)   A person who was not provided mailed notice of the decision as required under ORS 215.416(11)(c) or 227.175(10)(c) may appeal the decision to the board under this section within 21 days of receiving actual notice of the decision.

"(b)   A person who is not entitled to notice under ORS 215.416(11)(c) or 227.175(10)(c) but who is *adversely affected or aggrieved* by the decision may appeal the decision to the board under this section within 21 days after the expiration of the period for filing a local appeal of the decision established by the local government under ORS 215.416(11)(a) or 227.175(10)(a).

"(c)   A person who receives mailed notice of a decision made without a hearing under ORS 215.416(11) or 227.175(10) may appeal the decision to the board under this section within 21 days of receiving actual notice of the nature of the decision, if the mailed notice of the decision did not reasonably describe the nature of the decision.

"(d)   Except as provided in paragraph (c) of this subsection, a person who receives mailed notice of a decision made without a hearing under ORS 215.416(11) or 227.175(10) may not appeal the decision to the board under this section.

"(5)   If a local government makes a limited land use decision which is different from the proposal described in

the notice to such a degree that the notice of the proposed action did not reasonably describe the local government's final actions, a person *adversely affected* by the decision may appeal the decision to the board under this section:

"(a)  Within 21 days of actual notice where notice is required; or

"(b)  Within 21 days of the date a person knew or should have known of the decision where no notice is required."

(Emphasis added.)

ORS 197.830 provides that the standing requirements to appeal to LUBA vary depending on the circumstances. In some circumstances, the legislature has required a person to demonstrate that he or she is aggrieved or adversely affected. *See* ORS 197.830(3), (4)(b), (5). In other circumstances, and as pertinent to this case, the legislature has required that a person demonstrate that he or she filed a notice of intent to appeal and appeared before the local government. *See* ORS 197.830(2). ORS 197.830(2) does not require that a person demonstrate that the decision will aggrieve or adversely affect him or her. Nor does subsection (2) require a person to demonstrate that LUBA's decision will have a practical effect on him or her. If we were to interpret ORS 197.805 in such a way that LUBA must require a person to demonstrate the practical effects requirement articulated in *Utsey* before the person has standing to appeal a decision to LUBA, we would be adding a requirement to ORS 197.830(2) that the legislature did not impose.[8] *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

---

[8] Because this case concerns LUBA's determination that Just had standing under ORS 197.830(2), we need not discuss the meaning or the distinctions, if any, between the requirements of aggrievement and adverse effect as articulated in ORS 197.830(3), (4)(b), and (5), and the practical effect requirement as articulated in *Utsey*.

For all of those reasons, we conclude that the text and context of ORS 197.805 do not require LUBA to apply the justiciability doctrine in the manner that this court applied it in *Utsey*. Because Just appeared before the local government and filed a notice of intent to appeal, he had standing to appeal to LUBA under ORS 197.830(2). Accordingly, LUBA did not err in refusing to dismiss Just's appeal on the ground that he lacked standing under *Utsey*.

■ We now turn to the issue of whether Just must demonstrate standing as a respondent on review in this court. In *Utsey*, we expressly addressed that issue as follows:

> "That leaves the question of to whom the practical effects requirement applies. On that question, the courts have been more categorical: To have standing, *the person invoking the jurisdiction of the courts* must establish that a decision would have a practical effect on him or her. * * * It is not sufficient that the person *against whom* a proceeding is initiated might be affected by a judicial decision."

176 Or App at 543 (emphasis in original). Based on our reasoning in *Utsey*, we conclude that Just, as *the respondent on review,* need not establish that a decision would have a practical effect on him. Only the person or persons *invoking the jurisdiction of the court* must establish that a decision would have a practical effect on him or her.

■ Finally, we turn to the trust's motion to dismiss the cross-petition. As explained above, the trust moved to dismiss Just's cross-petition, arguing that, under *Utsey*, Just must "establish the justiciability of [his] claim as a matter of constitutional law." According to the trust,

> "[a]s the only opponent to this annexation, * * * Just did not establish his standing at the local level, at LUBA or in his Cross-Petition to this Court. In fact, * * * Just falls squarely into the holding of *Doty v. Coos County*[, 185 Or App 233, 235 n 1, 59 P3d 50 (2002), *adhered to on recons,* 186 Or App 580, 64 P3d 1150 (2003),] because he is appealing this case not because of any adverse affect on his personal interests, or because of any practical effect on any of his rights, but as a statement of principle against the actions of the City of Lebanon."[9]

---

[9] In *Doty*, we held that the petitioner had to demonstrate that a decision would have a practical effect on her rights. 185 Or App at 235 n 1. We concluded that she

Just responds that the trust's motion should be denied because our decision in *Utsey* was incorrect and should be reversed; consequently, his demonstration of statutory standing under ORS 197.830 (concerning standing before LUBA) and ORS 197.850 (concerning statutory standing in this court) is sufficient to afford him standing to seek review in this court. Just summarizes his position in his response to the trust's motion as follows: "Just rests on his statutory standing and adopts and incorporates the arguments as set forth in the briefs of *amici curiae* the State of Oregon and 1000 Friends of Oregon."[10]

Based on Just's assertion that he "rests on his statutory standing," we agree that, under our holding in *Utsey*, Just lacks standing to pursue his cross-petition because he has not demonstrated that a decision will have a practical effect on his interests. Although Just, *amicus curiae*, and intervenor argue that *Utsey* was wrongly decided, we decline the invitation to revisit our holding in that case. That is an issue for Supreme Court review. Thus, we grant the trust's motion to dismiss Just's cross-petition and turn to the remaining assignments of error.

■ In the trust's second assignment of error, it asserts that LUBA erred by concluding that the city's findings concerning the public need for the annexation were inadequate. With regard to Annexation Policy 5,[11] the city found, in part:

"The proposed annexation complies with City Annexation Policy, Section 5, in that a public need exists regarding a variety of issues. Based on current and projected rates of population growth, the City has a need to incorporate more residential land to accommodate such projected growth. If

did so by averring that (1) she "pass[ed] by the property regularly," and (2) the development of the subject property would adversely affect her use and enjoyment of an estuary that she used for passive recreation, including birdwatching, and that was located in the vicinity of the subject property. *Id.*

[10] *Amicus curiae* 1000 Friends of Oregon and intervenor State of Oregon both argue that, for various reasons, *Utsey* was wrongly decided.

[11] As LUBA indicated,

"Annexation Policy 5 provides:

" 'It shall be the burden of proof of the applicant that a public need exists for the proposed annexation and that the annexation is in the public's interest.' "

the land is not incorporated to provide areas of higher densities of residential development, then the rural areas will be under increased pressure to urbanize thus threatening to create sprawl conditions and encroachment on farmland. The City's 1997 Residential Lands Study states that the City will need at least 390 acres of land to support residential development to the year 2017. Only 109 acres of land have been annexed into the City since 1997, and several of these properties were already developed. Thus, there is a need for at least 281 more acres of land to be annexed into the City in order to meet residential housing requirements by 2017.

"* * * The area within the UGB has already been determined to be necessary for urbanization. The Comprehensive Plan specifically states at pg. 4-7 that the UGB contains urbanizable lands which are

" '1.   Determined to be **necessary** and suitable for future urban uses;

" '* * * * *

" '3.   Are **needed** for the expansion of the urban area.

"* * * There is no requirement in the Comprehensive Plan or Zoning Ordinance that says land within city limits available to meet the public need must be identified and inventoried."

(Boldface in original; citations omitted.)

LUBA reasoned, however, that those findings were inadequate:

"A copy of the city's 1997 BLI is not in the record. An excerpt of the 1997 BLI is attached to [the trust's] brief. However, we cannot tell from that excerpt whether the BLI concludes that 390 acres must be annexed to the city to meet the city's 20-year housing needs or whether the 1997 BLI simply concludes that only 390 of the 1,331 acres of residentially designated land that is already included within the UGB will be needed within the 20-year planning period, without identifying how many of those needed 390 acres are already within the city and are already planned and zoned for residential use. Therefore, the city's findings that the proposed annexation is needed and is consistent with Annexation Policy 5 and LCP Urbanization Element,

> Annexation Policy 1 are not adequate and are not supported by substantial evidence."

*Just*, 45 Or LUBA at 190-91. We agree with LUBA's analysis and affirm without further discussion.

In its third assignment of error, the trust asserts that LUBA erred by concluding that a specific development proposal is required before it may annex property. For the reasons stated in *Just v. City of Lebanon (A122516)*, 193 Or App 121, 88 P3d 307 (2004), we affirm the trust's third assignment of error without further discussion.

In its fourth through sixth assignments of error, the trust asserts that LUBA erred by concluding that (1) the city's failure to require a specific development proposal undermines the city's findings concerning the adequacy of city services; (2) the city's determination that the annexation maintains a compact urban growth pattern was undermined by its inadequate public needs findings; and (3) the city's rezoning decision should be remanded "based solely and exclusively on its decision to remand the annexation decision." We affirm those assignments of error without further discussion.

Affirmed on petitions; cross-petition dismissed.