Argued and submitted November 3, 2003, affirmed April 21, 2004

## Blake BARTON
## and Friends of Linn County,
*Petitioners,*

*v.*

## CITY OF LEBANON
## and Lebanon Theatres, Inc.,
*Respondents.*

## 2003-003, 2003-004, 2003-005; A122550

88 P3d 323

Christine M. Cook argued the cause and filed the brief for petitioners.

Natasha Zimmerman argued the cause for respondent City of Lebanon. With her on the brief were E. Michael Connors and Thomas McHill. E. Michael Connors argued the cause for respondent Lebanon Theatres, Inc. With him on the brief was Gregory S. Hathaway.

Before Deits, Chief Judge, and Schuman, Judge, and Leeson, Judge pro tempore.

Deits, C. J.

## DEITS, C. J.

Petitioners, Blake Barton and Friends of Linn County, seek review of a Land Use Board of Appeals (LUBA) order affirming three decisions by the City of Lebanon (the city). *Barton v. City of Lebanon*, 45 Or LUBA 214 (2003). Those decisions collectively facilitate the siting of a Wal-Mart Superstore. In its first decision, the city amended its comprehensive plan map to change the subject property's land use designation from Mixed Density Residential to "SPD."[1] The amendment of the plan map facilitates commercial development on the subject property. The second of the three decisions annexes a portion of the subject property (commonly known as the "Motor-Vu" property) to the city and replaces the county's Urban Growth Management 10-Acre Minimum zoning designation with the city's Mixed Use (MU) zoning designation. The third decision amends the text of the commercial lands policy in the city's comprehensive plan. That amendment removes a prohibition that the city believed effectively would have prohibited commercial development of the subject property.[2] On review, petitioners challenge the text amendment to the comprehensive plan and the city's decision approving the rezoning. We affirm.

The city's annexation of property in these consolidated cases is one of several that occurred in 2003; however, the annexation in this case is apparently unrelated to the others.[3] We withheld issuing our opinion in this case pending

---

[1] The "SPD" designation, as LUBA noted, is sometimes referred to in the record as the Special Plan District, but the city's decision uses the acronym to refer to the Special Development District. The correct use of the acronym is not important to the outcome of the proceeding. *Barton*, 45 Or LUBA at 215 n 1.

[2] According to LUBA, in its fourth decision, the city's planning commission granted planned development approval for a Wal-Mart Superstore on the property. The approval included a number of conditions, including city council approval of the annexation and zoning designation, the plan map amendment, and plan text amendments. The planned development approval was not an issue in the appeal before LUBA. *Barton*, 45 Or LUBA at 216-17. Accordingly, that decision is also not at issue in this judicial review.

[3] We considered the other annexations in the following cases: *Friends of Linn County v. City of Lebanon*, 193 Or App 151, 88 P3d 322 (2004); *Just v. City of Lebanon (A122516)*, 193 Or App 121, 88 P3d 307 (2004); *Just v. City of Lebanon (A122517)*, 193 Or App 132, 88 P3d 312 (2004); *Just v. City of Lebanon (A122519)*, 193 Or App 155, 88 P3d 936 (2004); *Just v. City of Lebanon (A122520)*, 193 Or App 159, 88 P3d 937 (2004).

resolution of the issues in those cases concerning standing to appeal to LUBA and standing to seek review of LUBA's decision in this court. In *Just v. City of Lebanon (A122517)*, 193 Or App 132, 88 P3d 312 (2004), we held the following: (1) The constitutional justiciability requirements articulated in *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003), do not apply to proceedings before LUBA. Specifically, a party before LUBA need not demonstrate that the decision will have a practical effect on his or her rights. (2) On judicial review, *Utsey*'s constitutional justiciability requirements apply to the person invoking the jurisdiction of this court and do not apply to respondents on review. (3) Under the holding in *Utsey*—the correctness of which we declined to reconsider—a petitioner on judicial review must demonstrate that a decision will have a practical effect on his or her rights.

■  Here, in determining whether the case is justiciable, we begin by determining whether petitioners have standing under the pertinent statutes. *See Utsey*, 176 Or App at 548-49. In making that determination, we are directed to the requirements of the specific statute that confers standing. *Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996) (discussing statutory standing). We then must determine whether the constitutional requirements for standing have been satisfied. *Utsey*, 176 Or App at 548-49. In their brief, each petitioner on review, Barton and Friends of Linn County, asserts both statutory and constitutional standing.

■  We begin by determining whether Barton has statutory standing. ORS 197.850(1) provides that "[a]ny party to a proceeding before the Land Use Board of Appeals under ORS 197.830 to 197.845 may seek judicial review of a final order issued in those proceedings." In turn, OAR 661-010-0010(11) provides that, generally, a party to an appeal to LUBA includes the petitioner. Here, Barton was a petitioner before LUBA. Accordingly, he has statutory standing to seek review in this court.

That conclusion, however, does not end our inquiry into Barton's standing. In *Utsey*, we said that, "regardless of

what the legislature provides regarding the standing of litigants to obtain judicial relief, the courts *always* must determine that the constitutional requirements of justiciability are satisfied." 176 Or App at 548 (emphasis in original). Specifically, we reasoned that (1) the party that invokes the jurisdiction of the court has the "obligation to establish the justiciability of its claim," *id.* at 549; (2) to establish that the claim is justiciable, the party "must demonstrate that a decision in this case will have a practical effect on its rights," *id.* at 550; and (3) "[t]he case law concerning the 'practical effects' requirement clearly states that an abstract interest in the proper application of the law is not sufficient," *id.* Under that standard, Barton must demonstrate that a decision will have a practical effect on his rights.

Here, Barton owns a grocery store inside the city. Because he is a competitor of the proposed Wal-Mart Superstore, a decision in this case will have a practical effect on his interests. For that reason, Barton has constitutional standing to seek review of LUBA's decision in this case.

Because Barton has standing, and he and Friends of Linn County make the same arguments in this review proceeding, it is immaterial whether Friends of Linn County independently has standing, and we do not consider that issue.[4] Additionally, and for that reason, in this opinion, we refer only to Barton as we address the merits.

█    In Barton's first assignment of error, he raises several arguments about the city's amendment to the text of its comprehensive plan. We address only the premise underlying his arguments that the city's interpretation of its previous policy was incorrect such that the city need not have amended the text of its plan. The city argued, and LUBA

---

[4] *See deParrie v. State of Oregon,* 133 Or App 613, 617, 893 P2d 541, *rev den,* 321 Or 560 (1995) (reasoning that, where at least one of the plaintiffs has standing and the legal positions of the other plaintiffs in the same action are exactly the same as the plaintiff with standing, "it is immaterial whether the other plaintiffs independently have standing"); *Thunderbird Motel v. City of Portland,* 40 Or App 697, 704, 596 P2d 994, *rev den,* 287 Or 409 (1979) (reasoning that, where one or more of the plaintiffs have standing to raise the matters presented on appeal, we will address the merits).

agreed, that, before it was amended by the city in this proceeding, the wording of Commercial Policy 5 of the city's comprehensive plan prohibited commercial development along Highway 20 south of Market Street, where the subject property is located. LUBA stated that the previous policy provided:

" 'Highway commercial development along U.S. 20 should be terminated at the Southgate Shopping Center, located at the intersection of Market Street and U.S. 20.' "

*Barton*, 45 Or LUBA at 217. The amended policy that the city adopted provides:

"Highway commercial development with direct access to U.S. Highway 20 (Santiam Highway) should not be allowed south of the intersection of Cascade Drive and U.S. Highway 20 (Santiam Highway)."

Barton asserts that that amendment was not needed because the previous policy did not prohibit all commercial development along the stated portion of Highway 20 but only prohibited development on properties zoned "Highway Commercial." In other words, Barton took the first two words of the policy, "Highway Commercial," as though the words embodied the title of a particular city land use designation. However, nothing in the policy suggests that restrictive interpretation. As LUBA correctly concluded, had the intended subject of the policy's prohibition

"been Highway Commercial *zoning* or commercial development with direct access to Highway 20, it would have been a simple matter to insert the word 'zoning' in place of the word 'development' or simply prohibit direct commercial access to Highway 20."

*Barton*, 45 Or LUBA at 220 (emphasis in original).

The city's understanding of the previous policy and its determination that the amendment was necessary is consistent with the text, context, and purpose of the previous policy. We agree with LUBA's disposition of this assignment of error.

■ In Barton's second assignment of error, he argues that LUBA erred in upholding the city's rezoning of the property as part of the annexation process. Barton argues that the

city must initiate a separate rezoning proceeding in order to apply a new zoning designation to the annexed territory.

In arguing that the city's rezoning of the property as part of the annexation process was proper, the city relied on Lebanon Zoning Ordinance (LZO) 3.050, which provides that all

> " ' areas annexed to the City shall be placed in a zoning classification in accordance with the adopted Comprehensive Plan. If a zoning designation other than one in accordance with the Comprehensive Plan is requested by an applicant, the zoning requested shall not be granted until the plan is amended to reflect concurrence.' "

*Barton*, 45 Or LUBA at 232 (quoting LZO 3.050)

In support of his position, Barton points to a number of rezoning ordinances, as well as to ORS 227.170, which concern the conduct of hearings. The authorities that Barton cites, however, address separate rezoning proceedings and do not themselves restrict the city's actions in conjunction with an annexation action. In short, Barton points to no legal requirement that LZO 3.050 may be applied *only* after the city invokes a separate rezoning action under another section of the code.

In addition, Barton, who appeared before the city to oppose the proposed decision, does not identify any harm to his interests as a result of the city's chosen procedure. As LUBA found, "the procedures that the city followed in this case included notice of the proposed zoning in advance of the planning commission and city council hearings." *Barton*, 45 Or LUBA at 234. Further, Barton participated in the proceedings before the city regarding the proposed rezoning. LUBA correctly concluded that Barton suffered no prejudice as a result of the city's process. ORS 197.835(9)(a)(B) provides that LUBA "shall reverse or remand the land use decision under review" if it finds that the local government "[f]ailed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner." Thus, LUBA did not err in affirming the city's procedure.

Affirmed.