Argued and submitted September 16, 1997, appeal dismissed April 22, 1998

FIRST COMMERCE OF AMERICA, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

NIMBUS CENTER ASSOCIATES,
an Oregon joint venture consisting of
George H. Killian and Joseph W. Angel,
George H. Killian, Joseph W. Angel,
William R. Robinson, Constance A. Robinson,
Chester Robinson Trust, Evelyn Z. Robinson
and Washington County,
a political subdivision of the State of Oregon,
*Defendants.*

NIMBUS CENTER ASSOCIATES,
an Oregon joint venture consisting of
George H. Killian and Joseph W. Angel,
George H. Killian and Joseph W. Angel,
*Appellants,*

*v.*

NATIONAL MORTGAGE CO.,
an Oregon corporation,
*Respondent.*

(C931118CV; CA A93182)

958 P2d 850

John J. Dunbar argued the cause for appellants. With him on the briefs were Jacob Tanzer, William A. Drew, Ball Janik LLP, Gary M. Berne, David A. Lokting and Stoll Stoll Berne Lokting & Shlachter.

William G. Wheatley argued the cause for respondent. With him on the brief were Lloyd W. Helikson and Jaqua & Wheatley, P.C.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

LANDAU, J.

---

* Deits, C. J., *vice* Leeson, J., resigned.

## LANDAU, J.

Plaintiff First Commerce of America, Inc. (First Commerce), initiated this action to collect on a loan to defendants, Nimbus Center Associates (Nimbus) and its principals. Defendants initiated a third-party action against third-party defendant National Mortgage Co. (National). The trial court entered summary judgment in favor of National and dismissed the third-party claims. Plaintiff and defendants then agreed to the dismissal of the primary claims without prejudice, and a stipulated judgment was entered to that effect. Defendants appeal, assigning error to the entry of summary judgment dismissing their third-party claims. We conclude that, because plaintiff dismissed its claim against defendants, the third-party claims are purely hypothetical and, consequently, not justiciable. We therefore dismiss the appeal.

The relevant facts are not in dispute. Nimbus obtained a mortgage from Benjamin Franklin Savings and Loan (Benjamin Franklin) to purchase a shopping center. The principal amount was approximately $2.5 million. When Benjamin Franklin failed, the Nimbus mortgage was assigned to the Resolution Trust Corporation (RTC). RTC placed the mortgage for sale as part of a "pool" of loans to be auctioned later in the year. Meanwhile, Nimbus suffered poor occupancy rates and fell behind on its mortgage payments.

Several weeks before the scheduled RTC auction, one of National's brokers, Richard Brooke, learned of the planned auction of the Nimbus mortgage. He had a long-standing relationship with one of the principals of Nimbus, George Killian. Brooke telephoned Killian. Killian understood from that conversation that Brooke anticipated that the mortgage would be purchased at a steep discount and that, if National acquired the mortgage at the auction, it would sell the mortgage to Nimbus. At the same time, however, National's loan buyer, Robert Stevenson, arranged to bid on the mortgage and, if successful, agreed to sell the mortgage to First Commerce.

National was not the highest bidder on the pool of loans that included the Nimbus mortgage. The purchaser of the loan pool, however, sold its rights to the pool to National, which then sold the Nimbus mortgage to First Commerce for $900,000. First Commerce then filed its complaint against Nimbus and its principals, seeking $2.85 million and foreclosure. Defendants filed third-party claims against National, alleging that National had an obligation to sell the mortgage back to Nimbus for $900,000. Defendants claimed as damages the difference between the $2.85 million that First Commerce sought and the $900,000 that they alleged they would have paid for the mortgage.

National moved for summary judgment, contending that it was entitled to judgment as a matter of law on the substance of each of the third-party claims against it. The trial court granted the motion. A year later, First Commerce and defendants agreed to a stipulated judgment dismissing without prejudice the claims brought by First Commerce against defendants. The record contains no mention of the terms of any settlement between First Commerce and defendants. The stipulated judgment does recite that it "has no effect [on] defendants' third party claims against National."

On appeal, defendants contend that the trial court erred in granting National's motion for summary judgment. National contends that, because the primary claims between First Commerce and defendants were dismissed, the remaining third-party claims are no longer justiciable and the trial court should be affirmed on that ground, among others. Defendants contend that the dismissal has no effect on the remaining third-party claims. According to defendants, "[t]he claim[s] against National remain[ ] dependent on the outcome of the claims by First Commerce," although they do not identify precisely how that is so. They also argue that the dismissal of the claims of First Commerce does not affect their third-party claims because the judgment expressly so provides. They finally argue that, in any event, we should follow cases construing the federal rules governing third-party practice, which hold that the dismissal of primary claims does not necessarily oust federal courts of jurisdiction to hear ancillary third-party claims.

■    ORCP 22 C(1) provides, in part:

"[A] defending party, as a third party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff * * *."

We described the nature of a third-party claim under this rule in the following terms:

"[A] third-party claim must in some way be dependent on the outcome of the main claim and * * * the third-party defendant's liability must be secondary or derivative. The third-party claim has the effect of shifting all or part of the third-party plaintiff's liability to its defendant."

*Hampton Tree Farms, Inc. v. Jewett*, 125 Or App 178, 193, 865 P2d 420 (1993), *aff'd* 320 Or 599, 892 P2d 683 (1995) (citations omitted); *see also Fisher v. Bowman*, 97 Or App 357, 360, 776 P2d 575, *rev den* 308 Or 500 (1989) (third-party liability must " 'in some way [be] dependent upon the outcome of the main claim' ") (quoting *United States v. One 1977 Mercedes Benz*, 708 F2d 444, 452 (9th Cir 1983), *cert den* 464 US 1071 (1984)). Thus, if a claim does not have the effect of shifting liability from the main claim, it may not be brought as a third-party claim. *Hampton*, 125 Or App at 194.

■    In this case, First Commerce alleged that defendants owed $2.85 million on the Nimbus mortgage. Defendants then filed third-party claims against National, attempting to shift approximately $1.95 million of that liability to National on a variety of theories. But then First Commerce and defendants dismissed the main claim without prejudice. The record is silent as to the terms of any settlement between First Commerce and defendants. All that the record reveals is that First Commerce agreed to withdraw its complaint against defendant and that it retains the right to file a new action to collect on the mortgage at any time. Thus, the extent of defendants' liability under the mortgage is entirely unknown. It could be that First Commerce and defendants simply agreed on a payment schedule and that the total liability remains at $2.85 million. It could be that the parties agreed on some amount less than that. It could even be that—because of market conditions or the condition of the

property—First Commerce decided to settle for something less than the $900,000 that it paid for the mortgage. In that event, of course, defendants would have no liability to shift to National.

■        At this juncture, any liability on the main claim is purely hypothetical. As a result, any opinion that we might render on the merits of defendants' third-party claims asserted against National likewise would be purely hypothetical; it would necessitate speculation that there is liability on the main claim to shift to National on the third-party claims. We lack authority to render opinions on purely hypothetical questions. *Barcik v. Kubiaczyk*, 321 Or 174, 182, 895 P2d 765 (1995). It necessarily follows that the appeal must be dismissed.

■        Defendants' reliance on the stipulation in the judgment that the dismissal of the main claim will not affect the validity of the third-party claims is unavailing. As the Supreme Court explained in *Barcik*, "justiciability may not be conferred by stipulation or consent of the parties in the absence of an actual justiciable controversy." 321 Or at 186; *see also AFSCME v. DAS*, 150 Or App 87, 92, 945 P2d 107 (1997) ("If a justiciable controversy does not exist, neither the terms of the trial court's judgment nor a stipulation that someone will comply with the judgment creates it.").

Nor is defendants' reliance on federal case law construing pertinent provisions of the federal rules of any assistance to their arguments. Defendants are correct that ORCP 22 was patterned after Federal Rule of Civil Procedure 14 and that we may look to federal cases construing that rule for guidance in construing our own. *Fisher*, 97 Or App at 360. Defendants are incorrect, however, in asserting that those cases support a different outcome in this case. The authorities on which defendants rely concern the extent to which federal courts—courts of limited jurisdiction—retain jurisdiction to hear ancillary claims if the primary federal claims have been dismissed. *See generally* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 1444 (2d ed 1990). That is an entirely different matter from the one before us. Moreover, federal cases applying Rule 14 to similar circumstances hold—as we do in this

case—that the dismissal of a main claim without the imposition of liability renders third-party claims moot. *See, e.g., McMunn v. Hertz Equipment Rental Corp.*, 791 F2d 88, 90 (7th Cir 1986) ("federal courts of appeals do not have time to decide appeals that may become moot because the order sought to be appealed is conditional on an event that may never come to pass"); *Faser v. Sears, Roebuck & Co.*, 674 F2d 856, 860 (11th Cir 1982) (third-party claims moot when principal claim dismissed on summary judgment); *Evra Corp v. Swiss Bank Corp.*, 673 F2d 951, 959 (7th Cir), *cert den* 459 US 1017 (1982) (third-party claims moot when principal claim dismissed); *Starobin v. Randolph Computer Corp.*, 689 F Supp 323, 327 (SDNY 1988) (third-party claim dismissed as moot after principal action dismissed by stipulation).

Appeal dismissed.