Argued and submitted November 25, 2003, reversed and remanded June 2, 2004

# HOOD RIVER VALLEY RESIDENTS' COMMITTEE, INC.,
an Oregon nonprofit corporation,
and Mike McCarthy,
*Appellants,*

*v.*

# BOARD OF COUNTY COMMISSIONERS OF HOOD RIVER COUNTY,
an Oregon municipal corporation,
and Mt. Hood Meadows Oregon, Ltd.,
an Oregon limited partnership,
*Respondents.*

020029CC; A118889

91 P3d 748

Christopher G. Winter argued the cause for appellants. With him on the briefs was Ralph O. Bloemers.

Will Carey argued the cause for respondent Board of County Commissioners of Hood River County. With him on the brief was Annala, Carey, Baker & Thompson, P.C.

Jonathan M. Radmacher argued the cause for respondent Mt. Hood Meadows Oregon, Ltd. With him on the brief were J. Kurt Kraemer and McEwen Gisvold, LLP.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioners appeal from the trial court's dismissal of their petition for a writ of review challenging a decision by the Board of County Commissioners of Hood River County (county) to enter into a land exchange agreement with respondent Mt. Hood Meadows Oregon, Ltd. (Mt. Hood Meadows). As described below, we conclude that (1) the allegations of petitioners' amended petition for writ of review are legally sufficient to establish standing to pursue this action; and (2) the county's decision to enter into the land exchange agreement was "quasi-judicial" in nature, ORS 34.040(1), and, thus, subject to challenge by writ of review. We further deny Mt. Hood Meadows's renewed motion to dismiss this appeal. Consequently, we reverse and remand.

Because this appeal arises from the circuit court's ORCP 21 dismissal of the action based on the asserted legal insufficiency of the allegations of petitioners' amended petition for writ of review, we describe the material facts assuming the truth of the factual allegations of that petition. *See Gruetzke v. City of Gresham*, 108 Or App 325, 329, 815 P2d 228, *rev den*, 312 Or 527 (1991).[1] Mt. Hood Meadows owns and operates resort and recreational facilities. In the spring of 2001, Mt. Hood Meadows began exploring a possible land exchange with the county. The proposed exchange was part of Mt. Hood Meadows's efforts to develop a destination resort in the Cooper Spur area of Mount Hood.

On August 20, 2001, the county held a public hearing on whether to enter into a land exchange agreement with Mt. Hood Meadows by which the county would exchange 640 acres of county-owned forestland for 785 acres of forestland owned by Mt. Hood Meadows. At the August 20 hearing, the county's board of commissioners tentatively approved the proposed land exchange, subject to various conditions. Thereafter, on August 29, 2001, the county and Mt. Hood Meadows

---

[1] On appeal, Mt. Hood Meadows, for the first time, attempts to present evidence controverting petitioners' allegations, particularly those pertaining to petitioners' standing. Our analysis and denial of Mt. Hood Meadows's motion to dismiss this appeal based on that newly proffered evidence are set out below. 193 Or App at 495-96.

entered into a property exchange agreement that was, again, subject to various conditions and the results of appraisals.

In February 2002, petitioners Hood River Valley Residents' Committee, Inc. (HRVRC), an Oregon nonprofit corporation, and Mike McCarthy, an individual resident of Hood River County, sought to have the county stay further action on the proposed land exchange based on data submitted by an appraiser. On March 11, 2002, the land exchange agreement between the county and Mt. Hood Meadows became final.

On March 27, 2002, petitioners filed their original petition for a writ of review, challenging the land exchange. Specifically, petitioners alleged that the county's decision to enter into and ultimately consummate the land exchange did not comport with several statutes pertaining to exchanges of county lands, including ORS 273.335,[2] and, consequently, the county had "[f]ailed to follow the procedure applicable to the matter before it" and had "[i]mproperly construed the applicable law." ORS 34.040(1)(b), (d). In addition, petitioners alleged that the county's decision was "not supported by substantial evidence in the whole record." ORS 34.040(1)(c).

Respondents moved to dismiss the petition on two grounds that are pertinent to this appeal. First, respondents asserted that the court lacked subject matter jurisdiction because the challenged decision was not the product of "quasi-judicial functions" and, thus, was not subject to review under ORS 34.040. Second, invoking *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003), respondents asserted that there was no justiciable controversy because the allegations of the petition, even if accepted as true, did not establish that the challenged decision had any "practical effect" on any substantial interest of either petitioner. Respondents submitted no evidentiary material contradicting the factual accuracy of petitioners' standing-related allegations in support of their motion to dismiss.

_____

[2] The requirements of that statute are addressed in detail below. *See* 193 Or App at 495-96.

The trial court issued a letter opinion that accepted both of respondents' arguments. However, before that ruling was reduced to a judgment, petitioners filed various motions, including a motion for reconsideration and a motion to file an amended petition for writ of review, which included additional detailed allegations pertaining to each petitioner's standing.[3] Thereafter, the trial court issued a second letter opinion granting petitioners' motion to amend, allowing reconsideration, and adhering in part to its prior ruling. In particular, the court ordered dismissal based on its determination that the challenged decision was not "quasi-judicial"— but, having done so, expressly declined to decide respondents' alternative "justiciability issues." That is, in contrast to its original letter opinion, which addressed the sufficiency of petitioners' allegations under *Utsey*'s "practical effects" standard, the trial court's second letter opinion expressly did not address whether the allegations of the amended petition sufficiently alleged a justiciable controversy.[4] The court then entered a judgment of dismissal that incorporated by reference its second letter opinion.

Petitioners appealed. After petitioners filed their opening brief but before respondents had filed their briefs, a significant procedural event occurred. Respondent Mt. Hood Meadows filed in this court a "Motion to Dismiss Appeal for Lack of Standing." Attached to that motion were extensive evidentiary materials, including excerpts of the deposition of petitioner McCarthy taken in a separate proceeding, excerpts of another deposition also taken in that proceeding, copies of pleadings, including memoranda, filed in yet another proceeding, a copy of an affidavit with evidentiary materials submitted in a fourth proceeding, as well as copies of various deeds and property records. None of those materials was part of the trial court record in this case. All of those materials were proffered with the express purpose of controverting the factual accuracy of petitioners' standing-related allegations in the amended petition for writ of review. Mt. Hood

---

[3] We describe those allegations in detail in our discussion of justiciability. *See* 193 Or App at 499-500 & 499 n 11.

[4] The trial court's letter opinion stated, in part, "Given the Court's ruling on the legislative/quasi-judicial issue, *i.e.*, that the case is dismissed, there is no further reason to address the justiciability issues."

Meadows acknowledged that those materials were outside the record of this case but asserted that,

> "because this Court has an independent duty to determine whether the parties before it present a justiciable controversy (*i.e.*, whether the parties have standing) * * * it is appropriate to raise this motion and present evidence in support of the motion, to this Court."

(Citations omitted.)

Petitioners opposed that motion. They further contended that, if this court accepted Mt. Hood Meadows's proffer of that evidence, petitioners should also be permitted to supplement the record to submit evidence pertaining to their standing; petitioners further asserted that they were entitled to "an evidentiary hearing before a special master to establish the relevant facts before the factfinder."

This court's motions department denied Mt. Hood Meadows's motion to dismiss:

> "One of the primary issues on appeal, based on the court's review of the appellants' brief, is whether appellants have standing to challenge the land exchange decision. This court has authority to determine that issue on the merits. Accordingly, a motion to dismiss 'for lack of standing' is not the appropriate procedural vehicle to resolve the question. Instead, the 'merits' of the appeal go to whether the trial court erred in determining that appellants lack standing.

> "In addition, the court notes with interest the efforts of the parties to supplement the record regarding the issue of standing, in effect, if the effort is successful, making this court the finder of fact with respect to whether the trial court erred in its standing determination. That proposition strikes the court as questionable, at least. Accordingly, the parties are directed, in connection with their further briefs on the merits in this matter, to provide the court with more extensive authority on the issue of whether it is appropriate for the court to consider evidence outside the trial court record in this matter."

The motions department concomitantly denied petitioners' motion to supplement the record.

In their opening brief, petitioners raised two "assignments of error." First, petitioners asserted that the trial court

had erred in determining that the land exchange decision was not the product of "quasi-judicial functions" and, thus, was not subject to review under ORS 34.040. Second, petitioners contended that the trial court "committed reversible error by ruling that [neither petitioner had] standing to challenge the decision to exchange land."

Given our understanding of the trial court's judgment of dismissal, and the bases of that judgment, *see* 193 Or App at 489-90, petitioners' second "assignment of error" is improperly so styled. That is so because the trial court, after allowing the filing of the amended petition, did not, in fact, render any ruling as to the sufficiency of petitioners' standing-related allegations under the amended petition. Thus, petitioners' "second assignment of error" and related argument is, actually, an argument in anticipation of an alternative ground for affirmance—*viz.*, that, regardless of whether the contested decision was "quasi-judicial," dismissal was proper because petitioners' allegations of standing were legally insufficient.

In respondents' briefs, they reiterated their arguments that (1) the county's land exchange decision pursuant to ORS 275.335 was "legislative" and not "quasi-judicial" in nature and, thus, was not subject to writ of review; and (2) the first amended petition did not allege a justiciable controversy in that it failed to sufficiently allege that a "substantial interest" of either petitioner had been injured as a result of the county's action. In addition, Mt. Hood Meadows renewed its motion to dismiss the appeal. *See* ORAP 7.15(3).[5]

We turn to the parties' arguments. At first blush, it might seem that, logically and prudentially, we should first address the renewed motion to dismiss. Indeed, in most cases, we would be compelled to decide a jurisdictionally based motion to dismiss before addressing the substance of

---

[5] ORAP 7.15(3) provides:

"If any motion other than a challenge to the court's jurisdiction is denied before submission of the case, the motion may not be resubmitted without leave of the court in the order on the motion."

Mt. Hood Meadows reasons, by negative implication, that, because its previously denied motion to dismiss represented "a challenge to the court's jurisdiction," that motion can be renewed without leave of the court. We agree.

any assignment of error, because a determination of our jurisdiction necessarily precedes any consideration of the "merits." *Anderson v. Evergreen International Airlines, Inc.*, 131 Or App 726, 729, 886 P2d 1068 (1994), *rev den*, 320 Or 749 (1995) (when argument implicates jurisdiction, we address it first). This case is remarkable, however, because the "merits" of the appeal, as presented by petitioners' assignment of error and by respondents' alternative basis for affirmance, *see* 193 Or App at 491, also pertain exclusively to jurisdiction. Specifically, if the county's decision to enter into the land exchange was not "quasi-judicial," then the trial court lacked jurisdiction to review that decision under ORS 34.040. *See, e.g., Babcock v. Sherwood School District 88J*, 193 Or App 449, 453, 90 P3d 1036 (2004) (affirming dismissal of petition for writ of review, concluding that, because challenged decision was not "quasi-judicial," circuit court lacked jurisdiction under ORS 34.040).[6] Similarly, respondents' alternative argument that the amended petition failed to allege facts establishing either of the petitioners' standing is also jurisdictional in nature.

We note, moreover, that, although Mt. Hood Meadows's motion is styled as a "Motion to Dismiss [the] *Appeal* for Lack of Standing" (emphasis added), its gravamen is that the *controversy* is, factually, nonjusticiable. The arguments that Mt. Hood Meadows raises in that motion are hardly "appellate-specific";[7] the same arguments could have been raised before the trial court—and, if the trial court had granted dismissal on that basis, we would have had jurisdiction to review the propriety of that dismissal. In that regard, the essence of Mt. Hood Meadows's renewed motion is indistinguishable from the essence of either the assignment of error or the alternative basis for affirmance. Each pertains to the justiciability of the controversy, and not to this court's jurisdiction specifically.

---

[6] *Cf. Sulliger v. Lane County*, 190 Or App 359, 365, 79 P3d 888 (2003) (suggesting that argument that writ of review was the plaintiff's exclusive remedy because challenged action was quasi-judicial should be advanced in a motion to dismiss for lack of jurisdiction).

[7] For example, by way of contrast, this is not a case in which the motion to dismiss the appeal was based on an untimely filing of the notice of appeal, the nonappealability of the trial court's disposition, or an appellant's post-judgment acceptance of the benefits of the judgment.

Thus, as a matter of prudential priority, Mt. Hood Meadows's renewed motion to dismiss, petitioners' assignment of error, and respondents' alternative basis for affirmance all stand on equal footing. We are not compelled to address the former first—and there are good prudential and practical reasons for not doing so. Specifically, both of the latter two matters present purely legal questions, and the resolution of either in respondents' favor would end the case. Conversely, the former might necessitate either the appointment of a special master or remand to the trial court for fact-finding, *see First Commerce of America v. Nimbus Center Associates*, 329 Or 199, 207 n 1, 986 P2d 556 (1999) (*Nimbus*), either of which could substantially delay resolution of this dispute and involve significant additional expenditure of judicial resources. Given those considerations, and because each of the three grounds for disposition potentially yields the same result, we begin with the assignment of error and then, as necessary, address in turn the alternative ground for affirmance and the motion to dismiss.

■   Petitioners contend that the trial court erred in concluding that the county's decision to enter into and consummate the land exchange was not the product of the exercise of "quasi-judicial functions" and, thus, was not subject to review by way of a writ of review. ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) *in the exercise of judicial or quasi-judicial functions* appears to have:

"(a)   Exceeded its jurisdiction;

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record;

"(d)   Improperly construed the applicable law; or

"(e)   Rendered a decision that is unconstitutional."

(Emphasis added.)

In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm*, 287 Or 591, 601 P2d 769 (1979), the court explored the difference between "judicial or quasi-judicial" decisions, which are reviewable under writ of review proceedings, and legislative decisions, which are not. After reviewing the history of the writ of review statutes, the court concluded that the purpose of the writ of review was to review "what would today be called administrative adjudications, but not 'ministerial' actions or the kind of discretionary choices of policy that could be described as 'legislative.' " *Id.* at 602. The court went on to state:

> "Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply preexisting criteria to concrete facts. The latter test alone proves too much; there are many laws that authorize the pursuit of one or more objectives stated in general terms without turning the choice of action into an adjudication. Thus, a further consideration has been whether the action, even when the governing criteria leave much room for policy discretion, is directed at a closely circumscribed factual situation or a relatively small number of persons."

*Id.* at 602-03.

The court then focused on the reasons for the procedural safeguards of writ of review proceedings:

> "One reason is to help assure that the decision is correct as to facts, another is to help assure fair attention to individuals particularly affected. When the preexisting criteria governing a factual situation are quite exact and designed to leave little room for unguided policy choice, and the decision depends on disputed facts, inferences, or predictions, quasijudicial procedures can allow those most concerned to participate in establishing the pertinent factual premises even when the decision concerns many people in a wide area. On the other hand, when the criteria applied in a decision of small compass allow wide discretionary choice, a formal hearing procedure is not designed to 'judicialize' factfinding, which may not be at issue. Rather it is designed to provide the safeguards of fair and open procedures for the relatively few individuals adversely affected, in lieu of the political safeguards on which our system relies in large scale policy choices affecting many persons."

*Id.* at 603-04.

Given those concerns, "[t]he fact that a policymaking process is circumscribed by * * * procedural requirements [such as public hearings] does not alone turn it into an adjudication." *Id.* at 604. Rather, at least three other considerations generally bear on the determination of whether governmental action represented an "exercise of * * * quasi-judicial functions." ORS 34.040(1). First, does "the process, once begun, [call] for reaching a decision," with that decision being confined by preexisting criteria rather than a wide discretionary choice of action or inaction? *Strawberry Hill 4 Wheelers*, 287 Or at 604. Second, to what extent is the decision-maker "bound to apply preexisting criteria to concrete facts"? *Id.* at 602-03. Third, to what extent is the decision "directed at a closely circumscribed factual situation or a relatively small number of persons"? *Id.* at 603.

Those three general criteria do not, however, describe a bright-line test. As we noted in *Estate of Gold v. City of Portland*, 87 Or App 45, 51, 740 P2d 812, *rev den*, 304 Or 405 (1987), *Strawberry Hill 4 Wheelers* "contemplates a balancing of the various factors which militate for or against a quasi-judicial characterization and does not create [an] 'all or nothing' test[.]" (Citation omitted.) In particular, we noted that the criteria are applied in light of the reasons for their existence—*viz.*, "the assurance of correct factual decisions" and "the assurance of 'fair attention to individuals particularly affected.' " *Estate of Gold*, 87 Or App at 51 (quoting *Strawberry Hill 4 Wheelers*, 287 Or at 604).

Applying those criteria, is the statutorily prescribed process by which a county undertakes to exchange county forestland for other land "quasi-judicial," as opposed to "legislative"? In answering that question, we begin with the statute that governs such exchanges. ORS 275.335 provides, in part:

"(1) Notwithstanding the provisions of ORS 275.330 or 275.340, any county court[8] may provide for the exchange of land within a designated county forest for other land when

---

[8] The "county court" is "the governing body and shall exercise general legislative authority over all matters of county concern and shall consist of the county judge and two county commissioners[.]" ORS 203.111. ORS 203.230, in turn, permits counties to abolish the office of county judge, add a third commissioner, and

in the judgment of the county court, supported as provided in subsection (3) of this section, such exchange is for equal value and is in the best interest of the county. * * *

"(2) Before making an order for exchange of property, the county court shall hold a hearing in the county court-room at which objections to the proposed exchange of real property may be heard. Notice of the hearing shall be given by publication weekly for two consecutive weeks, or two publications in all, in a newspaper circulated generally within the county, such notice to describe particularly the property affected. The date of hearing shall be not less than five days following the last date of publication of notice.

"(3) The exchange authorized in subsection (1) of this section shall be made by order of the county court duly entered in its journal and supported by reports of the value of the properties being exchanged submitted by:

"(a) The county assessor; and

"(b) The county forester or other qualified agent selected by the governing body."

The statute thus sets forth several criteria for a land exchange of the sort at issue here. First, the exchange of county forestland may occur only if, in the judgment of the commissioners, the land being exchanged "is for equal value," and the exchange "is in the best interest of the county." ORS 275.335(1). Second, before the exchange can occur, a hearing must be held at which objections may be heard. ORS 275.335(2). Finally, a journal entry must be made of the exchange, and it must be supported by reports of valuation provided by the county assessor and the county forester or other qualified agent. ORS 275.335(3).

We turn to the first of the factors set forth in *Strawberry Hill 4 Wheelers*—whether the governmental process, once begun, "calls for reaching a decision." 287 Or at 604. Respondents suggest that that criterion involves situations in which "someone filed a formal application or request, under which basic principles of due process would require a county to make some decision." Respondents suggest that,

---

"transfer all powers and duties of the county court and the county judge to the board of county commissioners[.]" ORS 203.230(1). Thus, as pertinent here, the "county court" described in ORS 275.335 consists of the county commissioners.

because Mt. Hood Meadows had not "filed a formal application or request" to purchase or exchange property, the land exchange did not involve a process that called for the county to reach a decision. In respondents' view, the exchange was merely a "business transaction." We do not view the first *Strawberry Hill 4 Wheelers* criterion so narrowly. Here, the county began a process when it entered into its preliminary agreement with Mt. Hood Meadows in August 2002. Pursuant to that agreement, the proposed exchange was subject to various conditions, including the results of a timber cruise and an appraisal by the county assessor. Moreover, and necessarily, the ultimate decision as to whether the exchange would, in fact, be consummated was also conditioned upon compliance with ORS 275.335. Thus, while the county was not required to enter into the initial agreement with Mt. Hood Meadows, once it did so, it was ultimately bound to reach a decision as to whether the contractual and statutory conditions for the exchange had been satisfied and, thus, whether the exchange should actually be consummated.

The second criterion concerns whether the county's decision involved applying "preexisting criteria to concrete facts." *Strawberry Hill 4 Wheelers*, 287 Or at 603. Invoking *Lane v. City of Prineville*, 49 Or App 385, 619 P2d 940 (1980), Mt. Hood Meadows contends that that criterion was not satisfied here. We disagree. In *Lane*, the petitioners brought a writ of review proceeding to challenge a municipal decision to sell city-owned land on which the city operated a parking lot. The petitioners contended that that decision was "quasi-judicial" in that the applicable statute, ORS 271.310(1),[9] authorized such a sale "whenever the public interest may be furthered." The petitioners reasoned, in part, that the "public interest" language so substantially restricted the city's

---

[9] ORS 271.310(1) then provided:

"Except as provided in subsection (2) of this section, whenever the state or any political subdivision thereof possesses or controls real property not needed for public use, or whenever the public interest may be furthered, the state or political subdivision may sell, exchange, convey or lease for any period not exceeding 99 years all or any part of their interest in the property to or with the state or any political subdivision of the state or the United States of America or any agency thereof or private individual or corporation. The consideration for the transfer or lease may be cash or real property, or both."

authority to sell the property as to render its decision "quasi-judicial." *Lane*, 49 Or App at 387-88. The trial court disagreed, dismissing the petition, and we affirmed:

"ORS 271.310(1) establishes general standards to guide the local governing body's decision; however, unlike [the statute at issue in *Strawberry Hill 4 Wheelers*], the statute we consider does not 'channel discretion' through a particularized procedural format. ORS 271.310(1) requires the governing body to do nothing except exercise its discretion in determining whether the property is 'needed for public use' or whether the 'public interest may be furthered' by its sale. We therefore conclude that the action of the city council under ORS 271.310(1) does not entail an adjudicatory application of preexisting criteria to concrete facts."

*Id.* at 389.

Respondents are correct that, under *Lane*, the requirement of ORS 275.335(1) that "such an exchange * * * is in the best interests of the county" cannot, and does not, render the county's decision here "quasi-judicial." However, there are other features of ORS 275.335 that materially distinguish this case from *Lane*. In particular, ORS 275.335(1) requires that the county must not only make a "best interests" determination but must also make a finding that the "exchange is for equal value." Further, the latter finding must be "supported by reports of the value of the properties being exchanged" prepared by certain county officials. ORS 275.335(3). That is, the statute prescribes the nature and form of the evidence that must substantiate the "equal value" finding. *Accord Lane*, 49 Or App at 388 (noting that ORS 271.310(1) did not "contain factfinding or other procedural requirements comparable" to those set forth in the statute at issue in *Strawberry Hill 4 Wheelers*).

We note, moreover, that ORS 275.335(2) prescribes a number of procedural requirements, including a hearing at which objections to the proposed exchange are to be heard. ORS 271.310 includes no such requirements. Although the court in *Strawberry Hill 4 Wheelers* cautioned that such procedural requirements do not "*alone* turn [a process] into an adjudication," 287 Or at 604 (emphasis added), the existence

of such requirements is, nonetheless, material in determining whether a process is "quasi-judicial," *id.*

In sum, ORS 275.335 requires the county to apply preexisting criteria concerning value to concrete facts concerning the particular proposed land exchange and also prescribes certain procedural—indeed, evidentiary—requirements for making that determination. Consequently, *Strawberry Hill 4 Wheelers*'s second criterion has been satisfied here.[10]

*Strawberry Hill 4 Wheelers*'s third criterion is also satisfied. Here, the decision to enter into and ultimately to consummate the land exchange was "directed at a closely circumscribed factual situation or a relatively small number of persons." 287 Or at 603. The challenged action concerns the exchange of certain specified pieces of property, and nothing else. That is a "closely circumscribed factual situation."

We cannot, and will not, pretend that the *Strawberry Hill 4 Wheelers* criteria are exact or that their application is certain. Nevertheless, applying those factors, we conclude that the land exchange decision challenged here was "quasi-judicial" for purposes of ORS 34.040 and that the trial court erred in concluding otherwise. Given that conclusion, we proceed to respondents' alternative basis for affirmance.

■ Respondents contend that the trial court's judgment of dismissal should be affirmed because neither of petitioners' allegations was legally sufficient to establish standing. As explained below, we conclude that McCarthy individually has standing to pursue a writ of review. That conclusion obviates the need to discuss whether HRVRC also has standing.[11]

---

[10] *Accord Strawberry Hill 4 Wheelers*, 287 Or at 606 ("[A]lthough the county court's action may eventually turn on a discretionary choice, the statutory design sufficiently channels discretion by factfinding procedures and broadly stated criteria to qualify as a * * * 'quasi-judicial' function for purposes of the writ of review under ORS 34.040.").

[11] The first amended petition for writ of review alleges that HRVRC is a non-profit organization that has among its goals the conservation of forestlands, and that HRVRC would be harmed by the land exchange because it involved the transfer of forestland to a private interest that planned to develop it as a destination resort. Petitioners further allege that HRVRC's members' interests were harmed because their recreational, aesthetic, and personal interests are affected by the

*See Just v. City of Lebanon,* 193 Or App 132, 135 n 2, 88 P3d 312 (2004) (where two parties make identical arguments and one has standing, court will treat controversy as justiciable).

In their first amended petition, petitioners alleged that McCarthy, a county resident and member of HRVRC, owns property near the land subject to the exchange, and that the exchange would affect his interest in the following ways:

> "McCarthy is likely to suffer from increased conflicts with his farming operations, decreased water quality and harm to the aesthetic values that a small community provides, including an ability to see the night sky and limited traffic. The foreseeable result of the land exchange, the construction of a large scale destination resort, is also likely to adversely affect McCarthy's ability to obtain farmworkers as well as his ability to continue to be able to conduct his farming operations in a sustainable manner. The property subject to the exchange is also in close proximity to a spring used by McCarthy and his family and in which Mike McCarthy has water rights dating back to 1920. Mike McCarthy also has a recreational interest in the use of the property that Meadows is receiving in the exchange, as he and his family have used the property that is being traded to Meadows on numerous occasions since as early as 1910 in the past to hike, mountain bike, cross country ski, ride horses, and cut Christmas trees. The land exchange places the property in private hands and effectively excludes Mr. McCarthy from that property."

■ A controversy is not justiciable if the party bringing the claim has only an abstract interest in the correct application of the law. *See Utsey,* 176 Or App at 542 (citing cases). A party must demonstrate that a decision in the case will have a practical effect on its rights. *Id.* at 550.

Respondents assert that the alleged effects of the land exchange on McCarthy's interests are too vague and speculative to give him standing to challenge the exchange. In particular, respondents suggest that this case is similar to *League of Oregon Cities v. State of Oregon,* 334 Or 645, 56 P3d

---

exchange. Finally, petitioners allege that, if HRVRC were not allowed to litigate this type of action in the public interest, it would be unable to attract new members and retain existing members.

892 (2002), in which the court concluded that several of the plaintiffs in a declaratory judgment action lacked standing. Although *League of Oregon Cities* concerned statutory standing under the declaratory judgment act, ORS 28.010 to 28.160, it drew on general legal principles concerning standing in its analysis and thus is instructive with respect to the constitutional standing issue presented in this case.

*League of Oregon Cities* involved a constitutional challenge to an initiative measure (Ballot Measure 7 (2000)) enacted to require government to compensate private property owners whenever regulations were enacted that reduced the value of real property. 334 Or at 649. Several of the plaintiffs alleged simply that they were landowners in areas that were subject to regulations restricting the use of property and asserted that the initiative measure would bring about increased development. *Id.* at 659. The Supreme Court determined that those plaintiffs lacked standing because they "failed to allege or show that Measure 7 would lead to increased development, how it would do so, and how, specifically, that increased development would affect them as landowners." *Id.*

The court concluded, however, that other landowner plaintiffs did have standing. For example, one rancher alleged that, if the measure caused the repeal or nonenforcement of land use restrictions, land surrounding his ranch could be developed for residential or commercial uses that would diminish the value of the ranch and interfere with his ability to continue ranching. *Id.* at 660. The court reasoned that, although the consequences that that plaintiff anticipated "were not certain to result from the implementation" of the measure, they were nonetheless "plausible, concrete ramifications." *Id.* at 661.

Respondents posit that McCarthy is in a position similar to those plaintiffs in *League of Oregon Cities* who lacked standing. They argue that the negative impacts identified by McCarthy are not, in fact, impacts of the land exchange itself, but merely of "possible future development" of the ski resort. We disagree. We view McCarthy's position as more similar to that of the rancher in *League of Oregon*

*Cities.* In particular, McCarthy has alleged that the challenged action was a step toward Mt. Hood Meadows's plan to develop the exchange property as a part of a destination ski resort "including 450 housing units, retail shops and village, skating rink, amphitheater, golf course, and associated developments." He specifically alleged how the development of the resort would likely affect his farming operation. That the land exchange does not *ensure* the development of the resort is not fatal because the development of the resort, like the expected development discussed in *League of Oregon Cities*, is plausible, as are the consequences McCarthy expects to result from such a development. *See also Doty v. Coos County,* 185 Or App 233, 235 n 1, 59 P3d 50, *adhered to on recons,* 186 Or App 580, 64 P3d 1150 (2003) (plaintiff who alleged that development of recreational vehicle park would adversely affect her use and enjoyment of nearby land for viewing of wildfowl had standing to challenge zoning decision).

We conclude that McCarthy has standing to challenge the land exchange. Thus, the trial court's judgment of dismissal cannot be affirmed based on that alleged insufficiency of petitioners' pleadings pertaining to standing. *See Just,* 193 Or App at 135 n 2.

■ We turn, finally, to Mt. Hood Meadows's renewed "Motion to Dismiss Appeal for Lack of Standing." As noted, that motion is predicated upon our consideration of evidentiary materials that have been proffered for the first time on appeal and would require us to resolve disputed issues of fact as to petitioners' standing.

Mt. Hood Meadows acknowledges that the standing issue, as framed before the trial court, pertained solely to the legal sufficiency of petitioners' pleadings and that respondents did not raise any issue as to the factual accuracy of those pleadings, much less attempt to contradict those allegations by affidavit or otherwise. Nevertheless, Mt. Hood Meadows contends that we must consider its belated evidentiary submissions and render findings as to the matters controverted by those submissions because, if true, those submissions demonstrate that petitioners lack standing. As

principal support for that proposition, Mt. Hood Meadows relies on *Nimbus*.

*Nimbus* does not compel an appellate court, in the circumstances presented here, to consider a proffer of extra-record evidence and, upon doing so, to resolve alleged factual issues pertaining to justiciability. Indeed, that case is materially distinguishable.

In *Nimbus*, the plaintiff brought an action against the defendants (Nimbus), who, in turn, asserted a third-party claim. The trial court entered a summary judgment in favor of the third-party defendant, dismissing the third-party claims, and the plaintiff and Nimbus subsequently agreed to a stipulated judgment of dismissal without prejudice of the first-party claims. 329 Or at 202-04. Nimbus then appealed, assigning error to the judgment of dismissal of its third-party claims. *Id.* at 204.

On appeal, we held that, because the third-party claims were dependent on the first-party claims and because the first-party claims had been dismissed without prejudice, the third-party claims were no longer justiciable. *See First Commerce of America v. Nimbus Center Assoc.*, 153 Or App 561, 567, 958 P2d 850 (1998). In so holding, we noted that "[t]he record is silent as to the terms of any settlement between [the plaintiff] and [Nimbus]." *Id.* at 566. Accordingly, we dismissed the appeal. *Id.* at 568.

Nimbus then filed a petition for reconsideration with this court, including with that petition a request to supplement the record with documents showing the terms of the settlement of the first-party claims. *Nimbus*, 329 Or at 204. Nimbus asserted that those documents demonstrated that the controversy was not moot. We denied the motion for reconsideration without ruling on the motion to supplement the record. *Id.*

Nimbus petitioned for review, renewing its motion to supplement the record with evidence of the first-party settlement. The Supreme Court allowed Nimbus's motion to supplement the record and, ultimately, accepted review. The court explained that its allowance of that motion was not based on ORS 19.365(4),[12] because the evidence had never

---

[12] ORS 19.365(4) provides:

been part of the circuit court record, and had not been inadvertently omitted from that record. *Nimbus*, 329 Or at 206. Rather, the motion was allowed as an exercise of the court's "inherent power to consider evidence" that "an event that is not reflected in the trial court record has rendered the case moot." *Id.* The court further explained that "[t]hat power derives from our duty to determine whether a justiciable controversy continued to exist." *Id.* at 207. The court then observed:

> "If the occurrence or nature of the event in question is disputed, then the parties might need to make a factual record. At the appellate level, that can be facilitated by remanding the matter to the circuit court or by appointing a special master to take evidence of the event. In this case, the parties do not dispute the occurrence of the event or its nature, only its legal significance."

*Id.* at 207 n 4.

The Supreme Court concluded that, despite its allowance of Nimbus's motion to supplement, and its consideration of the substance of the first-party claim settlement, it remained persuaded that the case was moot. *Id.* at 207-08. Finally, the court determined that, given that conclusion, the proper disposition was not merely to dismiss the appeal (as we had done) but, instead, to remand to the circuit court "with instructions to vacate the judgment disposing of the third-party claims and to dismiss the third-party claims as moot." *Id.* at 209.

*Nimbus* is materially distinguishable from this case. There, the belatedly adduced facts were simple and uncontroverted; only their legal significance was at issue. *See id.* at 207 n 4. Here, Mt. Hood Meadows's evidentiary submissions embody a multifaceted, factually intensive, "tit-for-tat" putative refutation of the accuracy of the standing allegations in petitioners' amended petition. Petitioners dispute both the accuracy and the significance of those submissions, seek

---

"When it appears to the appellate court that the record on appeal is erroneous or that the record does not contain material that should have been part of the trial court file, and the erroneous or incomplete record substantially affects the merits of the appeal, on motion of a party or on its own motion the court may make such order to correct or supplement the record as may be just."

leave (if we grant Mt. Hood Meadows's motion) to file their own evidentiary materials, and, in that event, request the appointment of a special master. That is a far cry from the circumstances in *Nimbus*.

■       Even more fundamentally, we do not understand *Nimbus* to hold that an appellate court is *compelled* to supplement the record and to engage in factfinding in every case in which a party belatedly proffers extra-record materials that purport to controvert justiciability. Rather, *Nimbus* refers repeatedly to the court's "inherent *power*"—not obligation—to consider such evidence. *Id.* at 206-07 (emphasis added). The appellate court is to engage in a principled exercise of that "inherent power," as informed by prudential considerations. Nothing more.

We conclude that the combination of two prudential considerations militates against the positive exercise of our "inherent power" in this case. First, Mt. Hood Meadows's new evidence is not uncontroverted. Rather, as noted, petitioners vehemently dispute the substance and significance of that evidence. Significantly, in those circumstances, *Nimbus* counsels that the trial court may be the preferable forum. *See id.* at 207 n 4.

Second, there is no risk here that, even if we decline to consider Mt. Hood Meadows's new evidence, a judgment on the merits of this case will issue without respondents having a further opportunity to present evidence controverting petitioners' standing allegations. That is so because, given our disposition of the appeal, we must remand to the trial court for further action. On remand, either respondent, if it so chooses, can present evidence challenging the factual accuracy of petitioners' standing allegations, and, if that occurs, the trial court can resolve those matters.

Given the posture of this case, there is no practical or jurisprudential reason for this court, at this time, to allow Mt. Hood Meadows's renewed motion to dismiss. Accordingly, we deny that motion.

Reversed and remanded.