Argued and submitted January 24, affirmed April 20, 2005

Nancy STAUS,
Gerald Heilman, and John Foster,
*Petitioners below,*

*and*

Joan ROSE,
*Petitioner,*

*v.*

CITY OF CORVALLIS
and Group Mackenzie,
*Respondents.*

2004-091, 2004-093; A126868

111 P3d 759

Jim Brewer argued the cause for respondent City of Corvallis. On the brief were David E. Coulombe and Fewel & Brewer.

Michael J. Lilly argued the cause and filed the brief for respondent Group MacKenzie.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Leeson, J. pro tempore.

## LANDAU, P. J.

This land use case comes to us with a history that is complex and saturated with land use planning jargon. But the heart of the dispute involves a relatively straightforward issue about whether the text of a comprehensive plan takes precedence over the colors on a comprehensive plan map. The Land Use Board of Appeals (LUBA) concluded that the text controls, and we agree. We therefore affirm.

Home Depot proposed to build a new store in the Corvallis area, located on a 17.5-acre portion of an existing business park known as the Corvallis Station site. The development required approval of, among other things, a zone change, a tentative subdivision plat, and a sign variance. It is the zone change that is the subject of the dispute before us now.

The context for the needed zone change is a complicated comprehensive plan scheme, which includes a plan base designation with plan overlays. LUBA described the comprehensive plan scheme in the following terms:

"The city uses comprehensive plan base map designations and applies comprehensive plan map *overlay* designations to those comprehensive plan *base* map designations. The city also employs zoning base districts and applies zoning *overlay* districts to those zoning base districts. To make things even more complicated, the same terminology is sometimes used for both *plan* map designations and *zoning* map districts. We set forth the comprehensive plan map designations that are at issue in these assignments of error in the margin, along with their acronyms, to provide a common point of reference and in an attempt to avoid confusion in our discussion of those designations below."

*Staus v. City of Corvallis*, 48 Or LUBA 254, 267-68 (2004) (emphasis in original).

In a footnote, LUBA then set out the following designations:

| "Plan Base Designations | Plan Overlay Designations |
|---|---|
| "General Industrial (GI) | Research Technology (RT) |
| "Light Industrial (LI) | Planned Development (PD) |
| | Regional Shopping Center (RSC)" |

*Id*. at 268 n 12. It is undisputed that, in the 1980 comprehensive plan, the Corvallis Station site carried an LI plan base designation and an RSC plan overlay designation.

At some point after 1980, the city began using the GI plan base designation in place of the LI plan base designation. The comprehensive plan map, however, did not reflect that change. Meanwhile, in 1993, the city council approved a plan map amendment that replaced the RSC plan overlay designation with an RT designation for an area that included the Corvallis Station site. Five years later, the 1998 comprehensive plan reflected the RT plan overlay designation with a color on the new comprehensive plan map. But the new map did not identify the base designation.

The city approved the Home Depot proposal, including a requested rezoning of the Corvallis Station site to GI with a PD overlay. Petitioner Joan Rose appealed to LUBA, arguing that, among other things, the city could not lawfully rezone the subject property without a comprehensive plan amendment. According to petitioner, the subject property actually has a plan base designation of RT, as shown on the 1998 comprehensive plan map. As a result, she argued, the city is obliged to change the base designation in the comprehensive plan before it may rezone the property. The city responded that, although there may be some ambiguity arising from the way that the comprehensive plan map apparently was colored, the fact remains that the text of the comprehensive plan describes RT as an overlay, not a plan base designation. The city pointed out that a particular comprehensive plan policy—numbered 8.9.7—directs the creation of an RT "district," which the city routinely uses as a synonym for a "zone," not a base plan designation. The fact that the

1998 comprehensive plan map shows that the Corvallis Station site is colored RT, the city insisted, does not mean that the plan base designation is RT. According to the city, there simply is no authority in the text of the comprehensive plan for treating RT as a plan base designation. Petitioner acknowledged that the comprehensive plan text does not include a reference to treating RT as a plan base designation. She argued that the text must have been inadvertently omitted.

LUBA rejected petitioner's argument. After reviewing the foregoing history of the parcel's designation, the relevant portions of the plan, and the parties' arguments, LUBA concluded that the comprehensive plan, as it pertains to the issues in this case, is "exceedingly ambiguous." In light of that ambiguity, LUBA continued, the dispositive question is whether the city's interpretation of the relevant ordinances is reasonable. LUBA concluded that it is. 48 Or LUBA at 271-76.

On review, petitioner argues that LUBA erred "in relying on ambiguity about the *meaning* of the RT plan designation to defer to a city interpretation that concludes that the RT does not *exist* as a base plan designation." (Emphasis in original.) As we understand it, petitioner's argument is that LUBA relied on a nonexistent conflict between the text of the comprehensive plan and the 1998 comprehensive plan map. She argues that,

> "in order to determine whether the RT plan designation exists as a base plan designation, LUBA inquired into the meaning of the RT plan designation. Finding ambiguity about its meaning through the absence of descriptive language in the comprehensive plan, the Board deferred to the city's interpreting away its existence. This conflicts, fatally, with the text and context of the plan, which confirm that the RT designation exists as a base plan designation."

The city and respondent Group MacKenzie argue that petitioner's argument amounts to mere question-begging; it makes sense only if it is assumed that, by virtue of the coloration of the 1998 comprehensive map, the city created an RT plan base designation in the first place. If that conclusion is not merely assumed, respondents argue, there

is an apparent conflict between the text of the comprehensive plan and the coloration of the map. That ambiguity, respondents insist, must be resolved in favor of the city's interpretation, as it is not inconsistent with the wording of the plan or any other source of law.

At the outset, we note that none of the parties has cited any plan provision or other city ordinance that speaks to resolving ambiguities in relevant land use texts. Our own review of the plan provisions in the record reveals no such interpretive aid to guide the reader when seeking to resolve inconsistencies between, say, the comprehensive plan text and the plan map.

The text of the plan itself, however, expressly identifies LI and GI as plan base designations. RT is not listed as a base plan designation. Instead, it is expressly listed as an overlay. There is, as respondents correctly assert, nothing in the text of the plan that refers to RT as a base plan designation.

In addition, comprehensive plan policy 8.9.7 states that the city is to designate RT as a distinct industrial district, and, as LUBA noted, it appears that the city uses the term "district" to refer to a zone or overlay of the plan base designation in the plan. In any event, had the drafters of the policy intended that the RT designation function as a plan base designation, the policy would seem to be unnecessary.

In short, there is nothing in the text of the comprehensive plan that supports petitioner's argument that RT actually amounts to a plan base designation. Her only argument appears to be that the coloration of the map somehow takes precedence over the text of the comprehensive plan. She cites no authority for that proposition, and we are aware of none. Certainly nothing in the comprehensive plan suggests that the coloration of the map has that effect. We therefore conclude that LUBA correctly determined that the city's interpretation of relevant ordinances was reasonable.

Affirmed.