Argued and submitted May 10, affirmed August 9, 2005

FLYING J, INC., ·
*Respondent,*

*v.*

MARION COUNTY,
*Respondent below,*

*and*

TRAVELCENTERS OF AMERICA
and Leathers Fuels, Inc.,
*Petitioners.*

2003-192; A127931

117 P3d 1027

William K. Kabeiseman and Kelly Hossaini argued the cause for petitioners. With them on the joint brief were Edward J. Sullivan and Garvey Schubert Barer and Phillip E. Grillo and Miller Nash LLP.

G. Frank Hammond argued the cause for respondent. With him on the brief were Richard G. Lorenz and Cable Huston Benedict Haagensen & Lloyd LLP.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

LINDER, P. J.

---

* Haselton, J., *vice* Ceniceros, S. J.

## LINDER, P. J.

In this proceeding to review a Land Use Board of Appeals (LUBA) decision, the central issue is the zoning of two acres[1] owned by respondent, Flying J, Inc. Specifically, the issue is whether the property is zoned Interchange District (ID) or Interchange District with a Limited Use Overlay (ID-LU), which restricts development of the property more than if it is zoned ID. LUBA concluded that the property has the less restrictive ID zoning. The owners of adjacent property, TravelCenters,[2] seek review, challenging that conclusion on various grounds. We affirm.

This case arises from, as LUBA put it, "a long-running dispute" between Flying J, TravelCenters, and the county[3] about the level of development allowed on property owned by Flying J that is located in Marion County, immediately west of the Fargo Interchange on Interstate 5. *Flying J, Inc. v. Marion County*, 49 Or LUBA 28, 30 (2005). LUBA's decision in this case sets forth a summary of the history of the land use decisions involving the disputed property. *Id.* at 30-32. For present purposes, the following abbreviated summary of the pertinent history suffices.

The two acres in question are part of a larger 29-acre parcel owned by Flying J. Originally, the 29 acres were zoned Exclusive Farm Use (EFU). In the late 1980s, as a result of a Goal 3 exception, the two-acre portion of the 29 acres was zoned ID without any special or further limitations. Then, in 1987 and 1988, the remaining 27 acres were zoned ID. Finally, of particular significance here, in 1989 the county enacted an ordinance that added the Limited Use Overlay Zone to the 27 acres that had been zoned ID in 1987 and 1988, making it ID-LU. But that zoning was *not* added to the two acres that first had been zoned ID some years before.

---

[1] Actually, the disputed parcel is 2.2 acres in size. For ease of reference, LUBA referred to it as a two-acre parcel. We do the same.

[2] The full names of the petitioners are TravelCenters of America and Leathers Fuels.

[3] Although the county has participated in other proceedings arising from this "long-running dispute," the county did not participate before LUBA and has not participated on review.

Thus, as of 1989, 27 acres of the 29 acres were zoned ID-LU, while the remaining two acres continued to be zoned ID.

On that much, the parties agree. Their disagreement arises because of Ordinance 1132, which Marion County adopted in 2001. We borrow from LUBA's description of that ordinance:

> "Ordinance 1132 adopts a community plan for the Fargo Interchange and adopts land use regulations to conform with administrative rules pertaining to rural communities. Ordinance [1132] includes findings that state 'that the Limited Use Overlay Zone and restrictions applied to the Flying J property within the Fargo Interchange Community Plan area through prior land use actions shall remain in effect for the property.' Nevertheless, Ordinance 1132 includes as an exhibit a zoning map that depicts the two acres within the ID-LU zoning designation."

*Id.* at 31 (quoting from an earlier LUBA order; citation omitted). As LUBA's description reveals, the text of the ordinance and the attached "exhibit" contradict each other. That is, the text does not purport to change the zoning of any portion of Flying J's property, but, just the opposite, declares that the Limited Use Overlay Zone that applied through "prior" land use actions (*i.e.*, the ID-LU zoning for 27 acres of the 29-acre parcel) "shall remain in effect." The map attached as an "exhibit," however, includes the two acres *not* previously zoned ID-LU in the shaded area designated ID-LU.

The question thus arises: Did Ordinance 1132 change the zoning of the two acres to ID-LU as a result of the attachment of a map as an exhibit showing it to be so zoned? The answer has significance to the parties. As LUBA explained in its decision, "the ID-LU zoning designation provides fewer outright permitted uses than does the ID zone and requires notice and an opportunity for interested parties to object to the proposed uses that are not permitted outright." *Id.* at 31. Thus, if the two-acre parcel is zoned ID-LU, Flying J's development rights are more limited than if the property is zoned ID. Conversely, TravelCenters's procedural rights to participate in any decision to permit development of the property are greater.

The dispute about the correct zoning of the two acres surfaced in 2003 when Flying J filed various applications to develop the two acres separately from the rest of the 29 acres. In response to those filings, the county evidently did not take any of the procedural steps that would have been required if the property were zoned ID-LU. In particular, the county did not provide notice to interested persons or neighboring property owners, such as TravelCenters, of the proposed development. Nor did the county schedule a hearing to allow interested parties to be heard on the development application. Nevertheless, TravelCenters became aware of the application and, in response, filed a mandamus action against the county seeking to compel it to give interested parties (including TravelCenters) notice and an opportunity to comment on any application to develop the property. After the mandamus proceeding was initiated, Flying J withdrew its applications to develop the property. The mandamus proceeding nevertheless continued. Eventually, the county came to the conclusion that the enactment of Ordinance 1132 changed the zoning of the two-acre parcel to ID-LU. The county stipulated to its interpretation of the legal effect of that ordinance as follows:

> "[T]he Marion County official zoning map was amended through [Ordinance 1132] and, as a result, the official zoning map now reflects that the county's Interchange District-Limited Use Overlay Zone ('ID-LU') applies to the entire 29-acre Flying J property, including the [two] acres that had previously been zoned [Interchange District (ID)]."

*Id.* at 32 (brackets in original). As a result of that interpretation, the county further stipulated that it would provide notice and an opportunity to comment to interested parties before allowing development of any portion of Flying J's property, including the two acres. Given the county's stipulation, TravelCenters dismissed its mandamus petition.

Flying J appealed the stipulation to LUBA, contending that the county's interpretation of Ordinance 1132 in the stipulation was a reviewable land use decision. LUBA determined that it had jurisdiction and, on appeal, concluded that, contrary to the county's interpretation, the ordinance did not change the zoning of the two-acre parcel to ID-LU. LUBA

therefore reversed the county's decision, and TravelCenters now seeks review.

■     Before addressing the merits, we first must determine if we have jurisdiction. Flying J moves to dismiss the petition for review, arguing that this dispute does not present the court with a justiciable controversy. Flying J relies on the fact that, after the mandamus proceeding was filed, it withdrew its application to develop the two-acre portion of its property. Thus, no application for development was pending when the county entered into the stipulation declaring that the two acres were zoned ID-LU. Likewise, no application was pending when Flying J appealed that stipulation to LUBA or when TravelCenters pursued judicial review of LUBA's decision in this court.[4] Relying on *1000 Friends of Oregon v. Clackamas County*, 194 Or App 212, 217, 94 P3d 160, *rev den*, 337 Or 160 (2004), Flying J argues that, in the absence of a pending development application, the issue is hypothetical and any judicial resolution of it would be purely advisory.

A comparison of the underlying controversy in *1000 Friends* and in this case reveals the flaw in Flying J's position. *1000 Friends* involved a county ordinance that potentially prohibited building a church on land zoned EFU. A church organization asked the county to determine whether the ordinance prohibited building the church and, if so, whether federal law would override that prohibition and require such an application to be allowed. The county concluded that federal law would override any prohibition imposed by the ordinance, requiring the county to permit a church to be built on EFU land. Significantly, however, no development application had been made. Rather, the question that the county was asked to answer was in anticipation

---

[4] Shortly after oral argument in this case, Flying J *did* submit a new application for development, a fact that TravelCenters, rather than Flying J, brought to this court's attention by way of a motion to supplement the record. Flying J opposed the motion, disputing the relevancy of that later application and arguing that, although a justiciable controversy may be made moot by later events, a case that is not justiciable when it begins cannot be made justiciable by later events. We need not decide who is right on that score, however, because we conclude that we have jurisdiction over this zoning dispute regardless of the existence of a development application.

of a possible *future* application. On judicial review, we concluded that the issue, in that posture, did not present us with a justiciable controversy:

> "The parties ask us to rule on a question—whether, if the church were to apply for a building permit, [the ordinance] would require denial and, if so, whether that denial could survive under [federal law]—that will arise only *if* the church requests a permit, *and* the county decides that the church neither fits within a permitted use nor qualifies for an exception. None of those events has occurred and, although the first might be highly likely, the second is not. In other words, we are being asked here to issue a purely advisory opinion. The county can do that and so, perhaps, can LUBA. We cannot."

*1000 Friends*, 194 Or App at 217 (emphasis in original; citation omitted).

█       Flying J's jurisdictional challenge in this case would be at least colorable if, as in *1000 Friends*, the issue here were whether any development application made by Flying J— past and withdrawn, or in future—should be approved. But that is not the issue. The issue is the *current zoning* of two acres of the 29-acre parcel that Flying J owns. To be sure, resolution of the zoning question will have bearing on any application that Flying J makes to develop the property, because the property's zoning affects what uses are permitted outright and what procedures will be followed for approval of the application. But whether any past, present, or future development application should be approved is not before us. Before us is only the question of how the two acres are zoned, which is a current issue—one that the parties dispute—that does not depend on any speculative or future event. *See US West v. City of Eugene*, 336 Or 181, 191, 81 P3d 702 (2003) (justiciable controversy requires a dispute based on present facts, not contingent or hypothetical events). As Travel-Centers correctly urges, "[t]he zoning of the two acres is a question that can be answered now, under the existing facts as they are presented." We agree. We therefore conclude that we have jurisdiction and turn to the merits.[5]

---

[5] The justiciability of this dispute also depends on whether our resolution of it will have a practical effect on TravelCenters's interests. *Utsey v. Coos County*, 176 Or App 524, 539-40, 32 P3d 933 (2001), *rev dismissed as moot*, 335 Or 217, 65 P3d

In challenging LUBA's conclusion that the two-acre parcel is zoned ID, rather than ID-LU, TravelCenters renews three of the arguments that it made to LUBA. Specifically, TravelCenters argues that the county's stipulation did not constitute a land use decision, and thus LUBA did not have jurisdiction to review it. Alternatively, TravelCenters argues that a prior periodic review order determined that the property was zoned ID-LU and that LUBA was bound by that determination. Finally, TravelCenters argues that LUBA misinterpreted Ordinance 1132 and that the ordinance in fact changed the zoning of the disputed two acres from ID to ID-LU.

On all three arguments, we agree with LUBA's analysis and resolution. LUBA's discussion of its analysis is thorough, and we endorse it. We write only to highlight the essential basis of our agreement with LUBA's decision.

■ In particular, we agree with LUBA that the county's interpretation of Ordinance 1132 in its stipulation in the mandamus action is a land use decision reviewable by LUBA. *Flying J, Inc. v. Marion County*, 47 Or LUBA 637, 643-44 (2004) (citing and relying on *Murphy Citizens Advisory Com. v. Josephine County*, 319 Or 477, 482-83, 878 P2d 414 (1994),

---

1109 (2003); *see also Just v. City of Lebanon*, 193 Or App 132, 137, 88 P3d 312 (2004), *rev allowed*, 337 Or 247 (2004) (the party invoking the jurisdiction of the court, rather than one responding to a petition for judicial review, must establish that a decision will have a practical effect on him or her). TravelCenters attached to its petition for judicial review an affidavit identifying how its interests will be affected by the resolution of this zoning dispute. *See* ORAP 4.60(2). In that affidavit, TravelCenters explains that it is a neighboring landowner located directly across the road from the two-acre parcel owned by Flying J and that development of the two-acre parcel will affect its use of its property, its investment decisions in its property, and traffic flow and congestion at the intersection common to its property and the two-acre parcel. Flying J does not dispute the accuracy of those averments, nor their adequacy to establish TravelCenters's standing. We are satisfied that TravelCenters has standing. *See Knutson Family LLC v. City of Eugene*, 200 Or App 292, 295 n 1, 114 P3d 1150 (2005) (property owners whose business might be affected by change of zoning of adjacent property had standing to challenge zoning decision); *Barton v. City of Lebanon*, 193 Or App 114, 117-18, 88 P3d 323 (2004) (grocery store owner had standing to challenge the decisions that facilitated the siting of a Wal-Mart Superstore because his grocery store would compete for business with the Wal-Mart; thus, a decision in the case would have a practical effect on the grocer's interests); *see generally Duddles v. City Council of West Linn*, 21 Or App 310, 325-26, 535 P2d 583 (1975) (observing that, under the most "conservative" approach to standing in zoning cases, neighboring property owners have standing if their property is proximate to rezoned land and if they suffer injury peculiar to their property or more substantial than that suffered by community at large).

which held that a county's stipulation in a mandamus case agreeing to approve a development permit was a land use decision subject to LUBA's exclusive jurisdiction). On the preclusive effect of the order on periodic review, we agree with LUBA that the order issued by the Land Conservation and Development Commission (LCDC) at most assumed that Flying J's two-acre parcel was zoned ID-LU; the correct zoning of the property was not an issue that LCDC decided as part of the periodic review. Nor did LCDC purport to interpret Ordinance 1132 or resolve any dispute over the correct identification of the applicable zoning. *Flying J*, 49 Or LUBA at 35-36.

■       Finally, we agree with LUBA that the text of Ordinance 1132 unambiguously states only that the limited use overlay zone that applied "through prior land use decisions shall remain in effect" for Flying J's property. No prior land use decision applied the ID-LU zone to the two-acre parcel; Ordinance 1132, by its terms, merely retained the current zoning of Flying J's property. The fact that a map incorrectly placing the two acres in the ID-LU zone was attached to the ordinance as an "exhibit" does not change that conclusion. *Cf. Staus v. City of Corvallis*, 199 Or App 217, 222, 111 P3d 759 (2005) (text of comprehensive plan takes precedence over colors on a comprehensive plan map). We know of no authority for the proposition that an exhibit to an ordinance contradicting the express text prevails and has the force and effect of law. Nor does TravelCenters provide any such authority. As LUBA concluded, "[t]he map, which is contrary to the text of the ordinance, does not control over" the clear language of the ordinance. *Flying J, Inc.*, 49 Or LUBA at 37.

Affirmed.