248 P.3d 435 (2011)
240 Or. App. 782
CAMPERS COVE RESORT, LLC, Respondent,
v.
JACKSON COUNTY, Respondent, and
Southern Oregon Citizens for Responsible Land Use Planning, Sandy Speasl, and Shelley Morrison, Petitioners.
2009117; A145328.
Court of Appeals of Oregon.
Argued and Submitted November 2, 2010.
Decided February 16, 2011.
*436 Pamela Hardy argued the cause and filed the brief for petitioners.
Roger A. Alfred, Portland, argued the cause for respondent Campers Cove Resort, LLC. With him on the brief was Perkins Coie LLP.
Frank Hammond argued the cause for respondent Jackson County. With him on the brief was County Counsel.
Sydnee B. Dreyer, Medford, argued the cause amici curiae for Jim Salyer, Jodi Salyer, Carl Sieg, Jeanette Sieg, John Mytinger, Angie Mytinger, Rob Collins, Dea Collins, Walter Wilkins, Annette Wilkins, Jeffrey Wells, Julia Wells, Allen Dinardi, Sheraine Dinardi, Gary Whittle, Sandi Whittle, Jim Hill, Charlene Hill, Jeff Feyerharm, Jill Feyerharm, Tom Hazel, Felicia Hazel, Michael Schooler, Robin Schooler, Mike Mahar, and Mary Mahar. With her on the brief was Huycke, O'Connor, Jarvis & Lohman, LLP.
Before ORTEGA, Presiding Judge, and SERCOMBE, Judge, and LANDAU, Judge pro tempore.
SERCOMBE, J.
Petitioner owns and operates a lakeside resort in Jackson County.[1] The resort has been used historically for camping and temporary residential occupancies. The current zoning of the property limits the types and intensity of the resort land uses. Petitioner applied for and obtained a decision from the *437 county that certified particular uses of the property as nonconforming uses and determined whether to allow alteration or expansion of those nonconforming uses. In concluding that some of the current uses of the propertyspecifically long-term occupancy of small manufactured dwellings lodged on campsites (so-called "park model recreational vehicle (RV) units" or "park model units")were not nonconforming uses, the county decision noted that those uses would require completion of particular approval processes in order to be legitimized.
Petitioner appealed the county decision to the Land Use Board of Appeals ("LUBA" or "the board"), arguing, among other things, that the county erred in deciding both the lawfulness of and the appropriate process to legitimize the existing park model unit uses, because those determinations were outside the scope of its application for a land use decision. Petitioner also argued that the park model uses were lawful because they had been approved earlier by the county.
Respondents are opponents of intensive land uses in the resort, including the continuation of the existing park model unit uses, and had participated in the local government proceedings. Respondents intervened in the LUBA appeal, defended the contested part of the county decision, and sought a LUBA decision that the county determination was both material and correct. LUBA decided that the contested part of the county decision was dictum and, if erroneous, that the error was harmless. On review, respondents contend that LUBA erred in concluding that the county determination was dictum. Petitioner, the county, and amici resort residents respond that the contested part of the county decision decided a hypothetical or abstract question and that judicial review of that determination is not justiciable. Those parties alternatively assert that, if review is justiciable, the LUBA decision was correct. We conclude that the appeal is justiciable and that LUBA correctly decided the matter, and, therefore, affirm.
The facts are drawn from the opinion of the board. Petitioner is the owner and operator of Hyatt Lake Resort, located on the lake of the same name in Jackson County. The resort dates from the middle part of the last century and was improved with a restaurant and lodge, bait shop, tent sites, a number of pull-through RV sites (22 with full electric, water, and sewer hook-ups and others with only electric and water connections), rental cabins, a dock, a sewage treatment system, and other related uses.
Petitioner obtained building permits and installed "park model" RV units on the 22 full-service sites in 2007. A "park model" RV unit is a manufactured dwelling that is not more than 400 square feet in size and is towed and installed for permanent use at a site. Petitioner seeks to install park model units at 13 additional campsites and to construct various accessory structures and an office building for the resort.
The resort is located on productive forestland. Some of the existing and planned resort uses are not permitted under contemporary state and local land use controls limiting the uses of land that is capable of producing timber. See OAR XXX-XXX-XXXX(4) (Statewide Planning Goal 4 (Forest Lands)); OAR XXX-XXX-XXXX(4)(e) (Goal 4 Rule) (allowing only temporary occupancies in tents, travel trailers, and recreational vehicles for camp-grounds on land zoned for forest use). In order to legitimize those existing and future uses, petitioner applied to the county for a permit to verify and alter the nonconforming uses that existed at the resort before and after the imposition of those land use controls.
The permit was sought under state and local laws regulating nonconforming uses. A nonconforming use is one that "`lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area.'" Clackamas Co. v. Port. City Temple, 13 Or.App. 459, 461 n. 1, 511 P.2d 412 (1973) (quoting 1 Anderson, American Law of Zoning § 6.01, 306 (1968) (emphasis omitted)). Under state and local law, a nonconforming use can continue until abandoned, but alterations or replacement of the use are regulated. Thus, under ORS 215.130(5), "[t]he lawful use of any building, structure or land at the time of the enactment *438 or amendment of any zoning ordinance * * * may be continued. Alteration of any such use may be permitted subject to subsection (9) of this section." ORS 215.130(9) requires an alteration to have "no greater adverse impact to the neighborhood" than the original nonconforming use.
Jackson County Land Development Ordinance (LDO) replicates those statutory policies. LDO 11.1.3(B) permits the continuation of "[n]onconformities * * * in accordance with the regulations of this Chapter." LDO 11.1.3(C) places the "burden of establishing that a nonconformity lawfully exists * * * on the owner." LDO 11.2.1 further provides that:
"An alteration of a nonconforming use may include a change in the use that may or may not require a change in any structure or physical improvements associated with it. An application for an alteration of a nonconforming use must show either that the use has nonconforming status, as provided in Section 11.8, or that the County previously issued a determination of nonconforming status for the use and the use was not subsequently discontinued as provided in Section 11.2.2."
LDO 11.8 sets out an approval process and standards to adjudicate an application for "verification of lawful nonconforming status." Pursuant to LDO 11.8, petitioner applied to the county in 2008 for verification of nonconforming uses and approval of alteration of those uses for an expanded Hyatt Lake Resort. Among the variety of uses sought to be legitimized, petitioner sought approval of a total of 35 RV sites, 22 of which were already occupied by park model units under earlier-issued building permits.
The county staff approved most of the requested nonconforming uses for the resort, including verification of 22 existing full hook-up RV sites and 13 existing water and electric RV hook-up sites, together with expansion of the uses of those 13 sites to include sewer connections and park model unit use. Petitioner appealed other aspects of the staff decision to the hearings officer; respondents appealed the nonconforming use verification for the park model RV uses.
The hearings officer affirmed the staff decision regarding the non-RV uses. However, he reversed the staff approval of the proposed expansion and alteration to allow park model units on 13 additional sites because of adverse impacts to the neighborhood. In making that determination, the hearings officer concluded that an exception to state policies limiting forestland development was required. The decision provides that
"[t]he parties devoted considerable effort with respect to the issue of whether the park model development is required to apply for exceptions from Goals 4, 11 and 14. The conclusions of this Decision support [respondents'] claim that such exceptions are required. The development has urban density; it is residential and the sewer system that serves it requires a Construction Installation permit and is a Community System, and it is located in a forest zone.
"Accordingly, [petitioner] must file for exceptions to Goals 4, 11 and 14 for the 22 park model units that have already been installed at the Resort."
The parts of the hearings officer's decision captioned "conclusion," "conclusions of law," and "order," however, referenced only the 13 additional park model sites and the non-RV uses.
Petitioner appealed the hearings officer decision to LUBA, contesting both the portion of the decision that referenced the need to obtain further approvals for the 22 park model units and an evidentiary ruling. Petitioner argued that the part of the decision that required petitioner to file for exceptions for the 22 park model units exceeded the hearings officer's authority because it was not a determination requested by petitioner's application; the 22 park model units had been approved earlier by the county and there was no need to obtain further land use approvals; and petitioner had vested rights to continue the 22 park model unit use without regard to the current zoning restrictions.[2] In response, the county asserted that *439 the hearings officer's statement on the 22 park model unit use was dictum and not part of the hearings officer's relevant legal determinations. Respondents contended that the nonconforming use status of the 22 park model unit sites was at issue in the local government proceedings, that the nature of the required approvals to allow the park model unit uses was material to the nonconforming use determination, and that the prior issuance of building permits did not obviate the need to determine the nonconforming use status.
LUBA agreed with respondents that the nonconforming use status of the 22 sites that are occupied by the park model RVs was at issue before the hearings officer:
"Thus, petitioner's nonconforming use application required the county to determine the nature and extent of the use of the 22 RV sites as of the date the use became nonconforming. In doing so, the hearings officer necessarily distinguished uses that existed as of that date from changes that occurred after that date, such as installation of the park model RVs. To the extent petitioner argues that the hearings officer lacked authority to conclude that the park model RVs are not part of the lawful nonconforming use of the 22 RV sites at issue, we disagree."
Campers Cove Resort, LLC v. Jackson County, ___ Or LUBA ___, ___ (LUBA No 09-117, Mar 31, 2010) (slip op at 6) (omitted). However, LUBA agreed with the county that any legal determination of the lawfulness or legal effect of the building permits for the installed 22 park model units was dicta:
"Although it is a close question, we agree with the county that the hearings officer's statements regarding the 22 installed park model RVs are most accurately understood as non-binding dicta, and not as a final decision regarding the validity of the 2007 building permits. The legal analysis leading up to those statements was required in any event to resolve petitioner's application to site 13 new park model RVs on the partial hookup sites. The hearings officer appeared to believe that the legal reasoning supporting his conclusion that the 13 new park model RVs could not lawfully be approved as alterations also applied to the 22 units installed in 2007. However, nowhere in the decision does the hearings officer purport to invalidate or revoke the 2007 building permits, or make any binding dispositions regarding the 22 installed park model units. Significantly, as noted, the `conclusions of law' section and the `orders' section of the decision, which sets out a number of conditions, make no mention of the 22 installed units. * * *
"Viewed in this light, the above-quoted statement that petitioner `must file for exceptions to Goals 4, 11, and 14 for the 22 park model units that have already been installed at the Resort' is best understood as an advisory statement of the hearings officer's views on what should be done in the future to resolve the legal uncertainties identified in the decision. We do not understand that statement or similar statements to constitute a binding determination that the 2007 building permit decisions are invalid, or understand the decision to require petitioner to file applications for goal exceptions, as opposed to some other means of resolving any legal uncertainties."
Id. at ___ (slip op at 10-11).
Respondents seek review of that part of LUBA's opinion. They argue that LUBA erred in classifying the hearings officer's statement as dictum on the basis of the location of the statement as outside the "order" portion of the decision. Respondents further argue that (1) a determination of the legality of the 22 park model unit use is necessary to assess whether it is a nonconforming use; (2) an assessment of what would be necessary to establish the 22 park model units as lawful structures is material to their legal status; and (3) that assessment was necessary to the result reached by the hearings officer and was not dictum. Respondents seek reversal of that part of the LUBA opinion and, presumably, a remand to LUBA for a determination of the legal correctness of the hearings officer's holding.
In response, petitioner and the county contend that judicial review of LUBA's holding on the status of the hearings officer's determination *440 as dicta is not justiciable for a number of reasons. Petitioner, the county, and amici first argue that LUBA affirmed the county decisionthe result advocated by respondentsand that respondents cannot appeal a decision in their favor. Second, those parties contend that any LUBA determination of the necessary future process to allow the existing 22 units is advisory and hypothetical and, consequently, any judicial review of that determination is also advisory and not justiciable. Finally, the petitioner, the county, and amici assert that LUBA was correct that the hearings officer's statement was dictum.
Even assuming that respondents lack standing to obtain review of an advisory LUBA opinion,[3] we conclude that our review is justiciable and that the determination by the board is correct. As noted above, petitioner and its confederates initially argue that respondents obtained the result they sought from LUBAaffirmance of the hearings officer's opinionand that respondents cannot seek review of an opinion and order in their favor. Petitioner relies upon Multnomah Co. v. Sabin, 24 Or.App. 249, 545 P.2d 615 (1976), to support its contention. In Sabin, the county brought suit against a carrier and the public utility commissioner seeking to set aside an order by the commissioner that made determinations under the Motor Carriers' Act and imposed a penalty on the county. The county contended that it was not subject to a penalty by the commissioner under the Act. The circuit court decreed that the order, "insofar as it imposes a penalty upon [the county,] is reversed and of no further force and effect and that the Order is otherwise affirmed." Id. at 252, 545 P.2d 615 (emphasis omitted). The county appealed from the part of the decree that affirmed the remaining portions of the commissioner's order. We noted that the court's reversal of the imposition of the penalty "completely disposed of the matter and the additional language of the decree * * * had nothing to do with the determination of the case." Id. at 252-53, 545 P.2d 615. We dismissed the appeal, concluding that, "[w]here a litigant has received by the final order he wished to attack all the relief available to him, he may not appeal from such judgment." Id. at 253, 545 P.2d 615 (citation omitted).
This case is a horse of a different color. Here, the primary contested issue before LUBA was the propriety and legal effect of the hearings officer's ruling on the needed approvals to legitimize the existing 22 park model units. Petitioner sought administrative review before LUBA of that very issue. Together, petitioner and the county had a different legal position on the relevance and correctness of the local government ruling than did respondents. LUBA sided with petitioner and the county, concluding that the ruling was dictum and without legal effect. Thus, respondents did not receive by the final LUBA order "all the relief available to [them]." They could have, but did not, obtain a LUBA order finding that the hearings officer's ruling was both necessary and correct. Such an order would have made it more difficult to continue the 22 park model units. Respondents seek review in order to obtain the result that they did not secure before LUBA on the main issue presented to the board. Contrary to petitioner's contention, respondents do not seek review of a LUBA order in their favor on that issue, and the requested review adequately contests the board decision under Sabin.
Nonetheless, petitioner and the aligned parties seemingly argue that the LUBA opinion was advisory and without practical effect, so that judicial review of the opinion is an empty exercise and beyond the scope of the court's authority. See 1000 Friends of Oregon v. Clackamas Cty., 194 Or.App. 212, 216-17, 94 P.3d 160 (2004) (review not justiciable of LUBA order determining effect of law on future, potential application for church use because dispute not based on present facts). But, the LUBA order here did not determine the result of a future, potential controversy. Rather, it decided a present dispute about whether the *441 hearings officer's ruling was effective and correct. See Flying J, Inc. v. Marion County, 201 Or.App. 99, 105, 117 P.3d 1027 (2005) (review of LUBA determination of the correctness of a county ruling on what zoning applied to property was justiciable because LUBA decided a "current issueone the parties dispute" and not the outcome of a "speculative or future event"). We conclude that this review proceeding is justiciable.
On the merits, we agree with LUBA that the hearings officer's specification of needed goal exceptions in order to legitimize the existing 22 park model units was beyond the scope of petitioner's requested land use approvals. According to the hearings officer's findings, petitioner sought two determinations from the county: a verification of the land uses in place (RV sites with utilities) at the time of the application of restrictive zoning to the property (which the parties assert to be June 1998 when the Goal 4 Rule, specifically OAR XXX-XXX-XXXX(4)(e), was adopted); and alteration of those historic uses for a number of uses, particularly an additional utility provision and park model unit placement on 13 campsites.[4] Petitioners did not seek approval of any alteration of the historic uses (campsite with full utility hookups) for the 22 sites currently improved with park model units. The hearings officer explained,
"It appears that the Staff did not consider whether the initial development of 22 park model units were consistent with the historic RV park use. The Staff, like the Applicant, seems merely to have concluded that since they are RVs under the Building Code, they could replace the RV use that was historically made at the Resort."
The contested parts of the hearings officer's decision conclude that the county's past authorization of installation of the 22 park model units was not sufficient and that goal exceptions were required in order to continue that development.[5] Neither of those determinations, however, is necessary to decide the nature of resort uses in 1998 or the merits of park model uses for 13 different sites. A determination of "verification of lawful nonconforming status" is obtained under LDO 11.8.1(A) by establishing "the approximate date that the use * * * was established; proof that the use * * * was lawfully established at the time it became nonconforming; and proof that the use has not been discontinued or abandoned * * *." That required petitioner to prove the lawful uses of the resort in 1998 (before the installation of park model units in 2007) and the continuation of those uses. That documentation of the legal uses in 1998 does not depend upon whether those historic uses were altered by the 2007 park model units authorization, the legal effect of the issued building permits, or how park model uses could be approved in the future. Accordingly, the hearings officer's *442 determination of those issues was beside the point and dictum. See Blacknall v. Board of Parole, 223 Or.App. 294, 300, 196 P.3d 20 (2008), aff'd, 348 Or. 131, 229 P.3d 595 (2010) (a decision-maker's statement that is not "essential to the determination of the precise question before it" is dictum). LUBA did not err in classifying that part of the hearings officer's decision as dictum and not binding.
Affirmed.
NOTES
[1] We refer to the parties by their status before the Land Use Board of Appeals. ORAP 5.15 (parties referred to in appellate briefs "as they were designated in the proceedings below"). Petitioner Campers Cove Resort, LLC, sought review by LUBA of the local land use decision. Respondents defended that decision before LUBA and now seek review of the board's opinion and order. Amici are owners of some of the contested park model units and are aligned with petitioner and the county in this review proceeding.
[2] LUBA's determination of petitioner's additional contentions before the board are not at issue in this review proceeding.
[3] But see Kellas v. Dept. of Corrections, 341 Or. 471, 145 P.3d 139 (2006); Polk County v. DLCD, 217 Or.App. 521, 176 P.3d 432, rev den, 345 Or. 317, 195 P.3d 65 (2008) (discussing standing as a function of the statutory authority of a court).
[4] The hearings officer's decision characterized the application as follows:

"The Application seeks verification of certain uses at the Resort as lawfully established nonconforming uses under LDO 11.8 and authorization for the alteration of some of the lawfully established nonconforming use to allow essentially the development that is already in place. Specifically, verification is sought for the Historic Improvements less the 8 primitive campsites and 1 cabin, together with 35 full hookup RV sites, 16 cabanas and 13 garages on the Private Land.
"Alteration of these uses is sought to allow an additional 13 of the 35 full hookup RV sites to be used for the installation of park models, [further describing additional non-RV site improvements]."
[5] In an earlier part of the decision, the hearings officer concluded:

"The park model development is not designed or intended for temporary or seasonal use, and the development is not a recreational vehicle park established as the historic use.
"While the Staff properly concluded that the Applicant justified a lawfully established nonconforming use of a recreational vehicle park at the Resort, it did not analyze whether the park model development that was allowed on the basis of ministerial permits exclusively is a recreational vehicle park as well. Case law establishes that a park model development such as that at the Resort is not temporary or seasonal and that permanent occupancy of spaces by park models is not consistent with the historic use of the resort. The absence of a proper analysis of the new development in comparison to the established nonconforming use, results in the conclusion that the authorization of the 22 park models that have already been installed was not proper. Those units constitute at least an alteration of the nonconforming use."